**J.E. ROSE, Appellant,**

v.

**INTERCONTINENTAL BANK, N.A., Appellee.**

No. 01–85–205–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 30, 1986.
Rehearing Denied Feb. 27, 1986.

Mark D. Wilson, Ladin, Engel & Kennedy, Houston, for appellant.

Tom Alan Cunningham and Sarah B. Duncan, Fulbright & Jaworski, Houston, for appellee.

Before JACK SMITH, DUGGAN and HOYT, JJ.

## OPINION

HOYT, Justice.

Intercontinental Bank, N.A. (the Bank), originally filed suit against Town North Chrysler Plymouth, Inc. (TNCP); Town North Leasing, Inc. (TNL); Steve King; and J.E. Rose. Prior to trial in the instant case, the court granted the Bank's motion for summary judgment against TNCP, TNL, and King and ordered a severance.

The Bank went to trial against Rose on the grounds that he was the alter ego of TNCP and TNL. The jury found that he was the alter ego, and the trial court entered judgment against Rose for $213,247.91.

J.E. Rose was an officer and shareholder in both TNCP and TNL. The remaining shareholders were his wife, son, and two daughters. TNL was originally a wholly-owned subsidiary of TNCP but when TNCP was sold in 1977, Steve King, who worked for Rose as a personal assistant and manager of TNCP, continued to operate TNL while winding up the business of TNCP. During this period of time, King was the only person authorized to write checks on the corporate account. TNCP's corporate account was maintained at Intercontinental Bank, and TNL's account was maintained at Jetero Bank.

When King's check writing activities during this period came to light in December 1979, it was discovered that there was a $283,331.15 overdraft in TNCP's account with the Bank. This overdraft was the result of checks being written on uncollected funds. King wrote a number of checks to himself, in addition to checks that Rose requested be made to Rose or to "Cash." To cover negative balances, checks were written back and forth between the TNL account at Jetero and the TNCP account at the Bank. On December 27, 1979, Jetero Bank discovered what was happening and "froze" TNL's account, causing an overdraft of the TNCP account.

Rose now brings 10 points of error, which will be discussed under the following groupings: alter ego evidence, alter ego submission, King's criminal conduct, Rose's good character, and J.H. Rose Truck Line bankruptcy.

### Alter Ego Evidence

In Rose's first three points of error, he contends that there was no evidence or insufficient evidence to support the jury's finding of alter ego. He premises this contention on the theory that in a contract alter ego case, the individual must use the corporation as a vehicle to perpetrate a fraud.

As authority for this position, Rose cites *Torregrossa v. Szelc*, 603 S.W.2d 803 (Tex. 1980), and *Lucas v. Texas Industries*, 696 S.W.2d 372 (Tex.1985). In both cases, the supreme court found that there was no evidence to support the jury finding that the corporation was the alter ego of its owner.

The Bank relies on the case of *Tigrett v. Pointer*, 580 S.W.2d 375 (Tex.Civ.App.— Dallas 1978, writ ref'd n.r.e.). The issue in *Tigrett* was whether the sole stockholder was "guilty of such unfair manipulation of the corporate enterprise in his individual interest that he can no longer be allowed to interpose the separate identity of the corporation to insulate himself from personal liability." *Id.* at 385.

■ Generally, a court will not disregard the corporate fiction and hold an individual liable unless the corporate entity is employed to defraud existing creditors, to circumvent a statute, to evade an existing obligation, to protect crimes, or to achieve or perpetuate a monopoly. *Angus v. Air Coils, Inc.*, 567 S.W.2d 931 (Tex.Civ.App.— Dallas 1978, no writ); *see also Torregrossa v. Szelc*, 603 S.W.2d 803, (which outlines factors significant in deciding whether to pierce the corporate veil in a contract case). In addition, there must be a showing of bad faith or fraud. *Angus*, 567 S.W.2d at 933.

■ In reviewing no evidence and insufficient evidence points, this Court has long been guided by *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). The supreme court has recently reaffirmed the standards set forth therein. *See Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985); *International Armament Corp. v. King*, 686 S.W.2d 595 (Tex.1985). On a no evidence point, we are to consider only the evidence favorable to the verdict; and if there is any evidence of probative value, then the jury finding must be upheld. *In re King's Estate*, 150 Tex. at 664, 244 S.W.2d at 661. On an insufficient evidence point, the court must consider and weigh all the evidence and reverse and remand the cause if the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.*

The evidence shows that checks were written on both TNCP and TNL accounts to make payments on lease cars used by Rose, his family members, and friends. A $10,000 downpayment was made on Rose's yacht with proceeds from the TNCP account. Cash from this account was also used to repay a $75,000 loan to Rose's daughter. The loan was needed to bring current debts owed by TNCP. These withdrawals were made from the account despite the fact that the assets of company had been sold and the corporation was winding up its affairs. There was also testimony that Rose authorized advances to King out of the TNCP account that exceeded $100,000. In addition, on each occasion that the account became overdrawn, Rose agreed to personally inject funds into the account. Finally, there was evidence that absent these withdrawals, the company could have successfully wound up its business. This is all evidence of probative value that will support the jury's finding.

In weighing all the evidence on the insufficiency point, we must consider the above in addition to evidence that would negate the jury finding.

Rose relies on the following facts to show that he did not personally use the corporations to perpetrate a fraud: that he was not active in the management of the corporation, that he was not authorized to

write checks on the corporate accounts, and that he put more money into the corporations than he took out.

 Fraud is not the only basis for submitting the alter ego theory to a jury. The use or misuse that a shareholder makes of the corporate form determines whether he will be insulated from personal liability. Failure to distinguish between corporate property and personal property and use of corporate funds to pay personal expenses without proper accounting is a basis for submitting the issue of alter ego. *See Roylex, Inc. v. Langson Bros. Construction Co.*, 585 S.W.2d 768, 771–72 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.).

 We find that the evidence was sufficient to show bad faith on the part of Rose. The record shows that Rose knew that the Bank relied upon his assurance and credit when the account was overdrawn. Additionally, he was aware that even if King borrowed funds for TNCP, he (Rose) was required to sign a personal guarantee. The fact that he was not actively involved in the day-to-day management of TNCP is not contrary to a finding of alter ego. In a situation where the evidence shows that the corporate assets have been sold and money was injected into the business to consummate the sale, and the company's loss at the time of sale was $246,000, the manipulation of the corporate account by an officer during a winding up of the corporation affairs is a breach of a fiduciary duty. *See Tigrett*, 580 S.W.2d at 383. Winding up the affairs of an insolvent corporation is an exceptional situation. In this situation, a jury could find that manipulation of the corporate bank account by an officer of the corporation justifies piercing the corporate veil. *Roylex, Inc.*, 585 S.W.2d at 771.

Points of error one, two, and three are overruled.

### Charge Submitting Alter Ego

In points of error eight, nine, and ten, Rose contends that the charge was improper because it was a global submission containing surplusage and an improper definition.

 On the global submission point, Rose's authority is *Scott v. Atchison, Topeka, & Santa Fe Railway Co.*, 572 S.W.2d 273 (Tex.1978). Rose, however, has misconstrued that decision. As pointed out by the supreme court, *Scott* was a case in which the variance between the pleadings and the evidence offered at trial was substantial, misleading, constituted surprise, and was prejudicial. *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 937 (Tex.1980). Furthermore, in any case where this objection is made, the specific variance must be stated in the objection, or it is waived. *Brown*, 601 S.W.2d at 938; Tex.R.Civ.P. 274. In the present case, the objection to the charge was as follows:

> The submission of these issues in the global form that they are being submitted is in a violation of Scott vs. Atchison Topeka & Santa Fe Railroad in that the Plaintiff has pled certain factors that he considered to be alter egos in his Pleadings. Some of these we have had evidence on; some have not. Other factors have been presented as evidence, and some of which have been presented as evidence, and some have not. On that basis, Your Honor, it would be impossible for the court on that basis if the jury made a finding on Issue No. 1 and Issue No. 2.

The Bank's pleadings specifically allege the theory of alter ego by stating that TNCP possessed insufficient assets to cover its transactions and that the bank accounts of the two corporations were used to perpetrate a fraud upon the Bank. The pleadings further allege that Rose, as the sole stockholder of TNCP, was its alter ego. Rose failed to point out in his objection which portions of the pleading and proof constituted the variance alleged. We find no variance of the type contemplated by the court in *Scott*. Therefore, we hold that this point of error was waived.

 On both the surplusage and improper definition points, appellant insists that a

finding of fraud is the central issue in finding alter ego. Basing a claim of alter ego on fraudulent intent is only one manner to establish the claim. *Tigrett,* 580 S.W.2d at 385. Each case involving alter ego must rest upon its own special facts. *Sagebrush Sales Co. v. Strauss,* 605 S.W.2d 857, 860 (Tex.1980). We hold that facts that show that an exceptional circumstance existed between a creditor and a majority stockholder of a corporation, and that also show a lack of good faith dealings by that majority stockholder with that creditor, provide a sufficient basis to pierce the corporate veil.

Because fraud is not a requirement in every alter ego case, it must be determined whether the court's instruction on alter ego contained the proper definition, and whether the factors the court directed the jury to consider diverted attention from the central issue in this case.

The court's instruction was as follows:

### Instruction

You are instructed that among the factors to be considered in determining if a corporation is the alter ego of an individual are whether the affairs of the corporation are indistinguishable from the individual's personal affairs and whether the individual acted in such a manner as to lead others to reasonably believe that the corporation had reference to the individual. In order to be the alter ego of an individual, the corporation must be used by the individual as an unfair device to achieve an inequitable result *or* as a sham to perpetrate a fraud, or to avoid a personal liability.

(Emphasis added.) This instruction incorporates the substantive law of alter ego as set forth in *Torregrossa, Sagebrush, Tigrett,* and *Roylex.*

Points of error eight, nine, and ten are overruled.

### King's Criminal Conduct

■ Rose contends that the trial court erred in refusing to admit evidence of Steve King's criminal conduct, because that evidence tended to show a continuing scheme or method of conduct, and it would impeach King's testimony regarding King's motive for floating checks between the TNCP and TNL accounts.

Rose's bill of exception evidence included a conviction that was later reversed, an order of deferred adjudication, a conviction that was on appeal at the time of trial, and evidence of the acts underlying the criminal charges against King. This evidence was offered under Tex.R.Evid. 404(b). He argues that the judge refused to admit this evidence because the acts were subsequent to the acts made the basis of this case.

On appeal, the Bank argues that Tex.R. Evid. 608(b) prohibits the introduction of specific instances of a witness' conduct for impeachment purposes unless the evidence is an exception under rule 609, which provides for the admission of a final conviction only. None of the offered evidence could be admitted as a final conviction. *See Poore v. State,* 524 S.W.2d 294 (Tex.Crim. App.1975); *Green v. State,* 663 S.W.2d 145 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd); Tex.R.Evid. 609(e).

Furthermore, this evidence cannot be used to impeach because King's motive is irrelevant to the ultimate issue in this case. *See United States v. Hernandez,* 750 F.2d 1256, 1257–58 (5th Cir.1985); *United States v. Wesevich,* 666 F.2d 984, 988 (5th Cir. 1982) (federal courts interpreting F.R.E. 404(b), which Texas adopted, hold that evidence showing the motive of a witness is not admissible, because a witness' state of mind is not an issue in the case). It is a question of first impression in Texas courts, however, whether a witness' continuing course of conduct is admissible as bearing on the ultimate issue. The ultimate issue in this case is whether Rose's transactions worked as an unfair device that brought about the Bank's loss. We find that King's intentions or motives were immaterial and irrelevant to Rose's manipulation.

Rose's reliance on *Payne v. Hartford Fire Insurance Co.,* 409 S.W.2d 591 (Tex.

Civ.App.—Beaumont 1966, writ ref'd n.r. e.), is misplaced. In that case, the court stated that where a *prior* plan becomes relevant in a civil case, evidence may be offered to establish that *prior* plan, which included the act charged. *Id.* at 594. No evidence was offered of a prior plan by King. All the evidence offered, if a plan at all, was *subsequent* to the time this cause of action arose.

Points of error four and five are overruled.

### Rose's Good Character

In the sixth point of error, Rose contends that evidence of his good character was admissible, because his character had been attacked by the pleadings and evidence.

█ Rose relies on Tex.R.Evid. 608 and the case of *Commonwealth Lloyd's Insurance Co. v. Thomas*, 678 S.W.2d 278 (Tex. App.—Fort Worth 1984, no writ). Under rule 608(a), the witness' reputation for truthfulness must first be attacked before he can offer rehabilitating evidence.

Rose contends that his character was attacked by the introduction into evidence that he had asserted the Fifth Amendment on deposition, that he had had checks returned for insufficient funds on his personal bank account, and that J.H. Rose Truck Line was in bankruptcy. The Bank contends that all this testimony was offered to show that Rose had reason to transfer corporate assets to his personal use and to support King's credibility. We need not decide whether Rose's character was attacked because the evidence offered on this issue is inadmissible. The bill of exception inquired:

Q. During the period of time you have known Ebb Rose, have you became [sic] familiar, sir, with his reputation in the community for truth and veracity?

A. Yes, I sure have.

Q. And would you tell us what that reputation is? Good or bad?

A. One of the finest men I know.

█ The answer referred to the witness' personal opinion of Rose's general good character. A witness' personal opinion of a party's character is inadmissible. *Commonwealth Lloyd's*, 678 S.W.2d at 295 (citing *Sherrill v. Phillips*, 405 S.W.2d 627, 633 (Tex.Civ.App.—Austin 1966, writ ref'd n.r.e.)).

Point of error six is overruled.

### J.H. Rose Truck Line Bankruptcy

█ In his remaining point of error, Rose contends that evidence elicited from King, that J.H. Rose Truck Line was in bankruptcy, should not have been admitted because it was immaterial, irrelevant, and based on hearsay. Under rule 801(e)(2), King's testimony that Rose told him that the truck line was in bankruptcy was not hearsay, because the statement was Rose's own statement and it was offered against him. However, we overrule this contention because, other than a bare assertion, Rose cites no authority to support it. *O'Dowd v. Johnson*, 666 S.W.2d 619, 620 (Tex.App.— Houston [1st Dist.] 1984, writ ref'd n.r.e.).

Point of error seven is overruled.

The judgment of the trial court is affirmed.