**MANCORP, INC.,**
Appellant/Cross–Appellee,

v.

**John C. CULPEPPER, Jr., Appellee,
and Culpepper Properties, Inc.,**
Appellee/Cross–Appellant.

**No. 01–88–831–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 14, 1989.

Rehearing Denied Dec. 21, 1989.

---

R. Scott Hogarty, Bill Jones, Liddell, Sapp, Zively, Hill & Laboon, Houston, for appellant/cross-appellee.

James L. Wright, Vinson & Elkins, Houston, for appellee/cross-appellant.

Before COHEN, WARREN and O'CONNOR, JJ.

## OPINION

COHEN, Justice.

Mancorp, Inc. ("Mancorp") sued John C. Culpepper, Jr. ("Culpepper") and Culpepper Properties, Inc. for breach of contract. Culpepper and Culpepper Properties, Inc. counterclaimed against Mancorp for breach of contract, breach of warranty, and deceptive trade practices.

Culpepper Properties, Inc., as owner, and Mancorp, as contractor, contracted for Mancorp to build the First Bank Galleria building. Mancorp claimed that the building was complete, pursuant to the terms of the contract and, therefore, Culpepper Properties, Inc. owed the final unpaid balance of $510,650. Culpepper Properties, Inc. contended, among other things, that the building was not complete because of material defects in the building.

The jury returned a verdict for Mancorp against Culpepper and Culpepper Properties, Inc. However, the jury found an offset of $289,376.90 due Culpepper Properties, Inc. for necessary repairs to the building. The trial court entered judgment on the verdict for the difference, $221,273.10, against Culpepper Properties, Inc., but entered a judgment non obstante verdicto ("J.N.O.V.") in favor of Culpepper, individually.

Mancorp appeals from the J.N.O.V., alleging the trial court erred in refusing to enter judgment on the verdict that Culpepper was the alter ego of Culpepper Properties, Inc. Culpepper Properties, Inc. appeals, arguing the trial court erred in: (1) permitting Mancorp to call certain witnesses at trial, in spite of Mancorp's violations of discovery rules; (2) refusing special issues pertaining to Culpepper Properties, Inc.'s counterclaim for breach of warranty and DTPA[1]; (3) erroneously defining the term "breach of contract"; (4) finding the evidence sufficient to support the jury's verdict that Mancorp did not breach the contract; (5) failing to find an irreconcilable conflict between two of the jury's responses; and (6) failing to find cumulative error based on the totality of the foregoing.

Mancorp, in its sole point of error, argues that the trial court erred in granting a J.N.O.V. in favor of Culpepper, individually, in view of the evidence supporting the jury's finding that Culpepper Properties, Inc. is an alter ego of Culpepper. In order to sustain a judgment notwithstanding the verdict, there must be no evidence to support the jury's finding. *Williams v. Bennett*, 610 S.W.2d 144, 145 (Tex.1980). We must review the evidence in the light most favorable to the disregarded findings, considering only the evidence and inferences supporting them, and rejecting all evidence and inferences to the contrary. *Id.*

We find that the only testimony concerning alter ego is that of Culpepper, the sole shareholder and president of Culpepper Properties, Inc. Culpepper and two corporate employees were the corporation's only officers and directors. Culpepper could not recall the specifics about the incorporation papers, shareholder's meetings, or board elections. He testified, however, about the corporation's routine practices, and that directors' meetings and board decisions were conducted and made informal-

1. Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. §§ 17.41–17.63 (Vernon 1987).

ly because all three directors worked in the same office.

Mancorp produced evidence of seven checks it received in payment for its work. The checks were drawn on the account of "John C. Culpepper, Jr., Bank Tower Project," and were signed by Culpepper, without a designation that he was an agent of Culpepper Properties, Inc. Mancorp contends this is some probative evidence to support its alter ego theory.

Texas courts are reluctant to pierce the corporate veil and impose personal liability upon an individual, such as its chief executive officer and controlling stockholder, thereby destroying an important fiction under which so much of the business of the country is conducted, and will do so only under compelling circumstances. *Aztec Management & Inv. Co. v. McKenzie*, 709 S.W.2d 237, 239 (Tex.App.—Corpus Christi 1986, no writ).

> 'Courts will not disregard the corporation fiction ... except where it appears that the individuals are using the corporate entity as a sham to perpetrate a fraud, to avoid personal liability, avoid the effect of a statute, or in a few other exceptional situations.'

*Torregrossa v. Szelc*, 603 S.W.2d 803, 804 (Tex.1980) (quoting *Pace Corp. v. Jackson*, 155 Tex. 179, 284 S.W.2d 340, 351 (1955)).

Ownership of all the stock in a corporation by a single individual does not, of itself, make the corporation the alter ego of the individual. *Aztec Management & Inv. Co. v. McKenzie*, 709 S.W.2d at 239. Although Culpepper did not remember details of the corporate formalities, Mancorp did not prove they were not followed. With only one stockholder and three directors, it is not unusual for corporate meetings to be informal. *Torregrossa v. Szelc*, 603 S.W.2d at 804.

There is no evidence the bank account used to pay Mancorp was used for any non-corporate purpose, or for anything except this particular corporate project, that Culpepper used the account to pay personal debts, or that personal funds were mixed in the account with project funds. The checks were signed by Culpepper at a time when he was the company president. No other relevant documents were in Culpepper's name, and there was no evidence of a sham corporate structure. *See Torregrossa*, 603 S.W.2d at 804. Moreover, Mancorp knew of Culpepper's status with Culpepper Properties, Inc. Only Culpepper Properties, Inc., not Culpepper individually, was named in the contract. *Id.* at 803. Mancorp neither alleged nor proved that it was misled, or changed its position to its detriment, in the belief that Culpepper was personally bound by the contract. We find it significant that the checks Mancorp relies on were all written *after* the contract was signed with the corporate entity, Culpepper Properties, Inc. As in *Torregrossa*, Mancorp knowingly made the deal with the corporation. *Id.* Finally, Culpepper's appealing, but ungrammatical business card, "Culpepper Properties, Inc., John C. Culpepper, Jr., his self," is less than a scintilla of evidence.

Nothing in this case resembles the gross fraud that justified piercing the corporate veil in *Castleberry v. Branscum*, 721 S.W.2d 270 (Tex.1986). There, the supreme court discussed the alter ego theory, although it recognized that the discussion was unnecessary to the holding. *Id.* at 272. "The basis used here to disregard the corporate fiction ... is separate from alter ego." *Id.* The court further stated, "Alter ego applies when there is such unity between corporation and individual ... *and holding only the corporation liable would result in injustice.*" *Id.* (emphasis added).

No evidence here shows that holding only the corporation liable would result in injustice or that the corporate defendant is unable to pay this judgment. Other cases cited by Mancorp are similarly distinguishable. *See First Nat. Bank v. Gamble*, 134 Tex. 112, 132 S.W.2d 100 (1939) (fraud); *Robbins v. Robbins*, 727 S.W.2d 743, 746–47 (Tex.App.—Eastland 1987, writ ref'd n.r.e.) (suit by widow proved community property was used to fund corporation; thus, court found more than "mere unity of financial interest"); *Loomis Land & Cattle Co. v. Wood*, 699 S.W.2d 594 (Tex.App.—Texarkana 1985, writ ref'd n.r.e.) (prom-

issory notes signed in individual capacity, not as corporate agent).

Disregarding the corporate fiction is an equitable doctrine in which courts take "a flexible fact-specific approach focusing on equity." *Castleberry*, 721 S.W.2d at 273. Moreover, courts are more likely to disregard the corporate fiction in tort cases than in contract cases, like this one, because the risk of loss in a contract case is apportioned in prior dealings, when the bargain is first struck. *Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 375 (Tex.1984). We find no evidence that Mancorp was induced "to fall victim to a basically unfair device by which [Culpepper Properties, Inc.'s] corporate entity was used to achieve an inequitable result." 696 S.W.2d at 376.

We hold, as matter of law, that under the facts of this case, the seven checks constituted no evidence that the corporation was Culpepper's alter ego.

Mancorp's point of error is overruled.

■ Culpepper Properties, Inc.'s first point of error argues that the trial court erred in permitting one of Mancorp's expert witnesses, David Orthold, to testify, because Mancorp failed to timely identify him. Culpepper Properties, Inc. asked Mancorp, in January 1988, to list its fact and expert witnesses. Pursuant to the court's pre-trial order, the deadline for supplementing the list of expert witnesses was March 10, 1988, and for taking depositions, March 21, 1988.

On March 10, 1988, Mancorp deposed John Sprott, an agent of Ryan Mortgage, the project's lender. Mancorp argued in the trial court that it then first learned of Orthold's importance. On March 17, Mancorp sought leave of court to designate Orthold an expert witness. On Friday, April 1, 1988, the trial court found good cause and allowed Mancorp to designate Orthold. The trial commenced on Monday, April 4, 1988.

Mancorp learned of Orthold in May 1987, during Culpepper's deposition. However, Mancorp argued that at the March 10, 1988 deposition, it first learned that Orthold had been hired by Ryan Mortgage, not Culpep-per Properties, Inc., and that he made written monthly reports to Ryan Mortgage and Culpepper Properties, Inc. concerning the percentage of completion of the project. Ryan Mortgage used these reports to decide whether to advance funds for the project.

Rules 166b(6) and 215(5), Tex.R.Civ.P., require good cause to justify a late supplement to discovery. What constitutes good cause is a matter for the trial court's discretion. *Gee v. Liberty Mutual Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989). "If the trial court, in its discretion, finds that good cause exists to allow the evidence, such evidence should be admitted." *Id.*

We find no abuse of discretion. The court could have been influenced by the fact that Culpepper Properties, Inc. knew of Orthold and possessed his reports long before Mancorp did. When Mancorp's motion was heard (the Friday before the Monday trial), Culpepper Properties, Inc. declared it was ready for trial, even if Orthold was allowed to testify, and did not attempt to depose Orthold or seek a continuance in order to do so. Lack of surprise to the party opposing late supplementation is a factor the trial court may consider. *See Gee*, 765 S.W.2d at 395 n. 2.

We have found no case holding that a court abused its discretion by allowing a party to make a late supplementation of an expert whose reports had long been in its adversary's possession. The typical case is where a party makes a late designation (or no designation) of an unknown witness under its control. *See Investors, Inc. v. Hadley*, 738 S.W.2d 737, 742–43 (Tex.App.—Austin 1987, writ denied); *Williams v. Union Carbide Corp.*, 734 S.W.2d 699 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.); *Walsh v. Mullane*, 725 S.W.2d 263, 264 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). Orthold, however, was known by, and sent reports to, Culpepper Properties, Inc. Courts have often upheld the trial court's discretion in excluding testimony of late named witnesses; but that does not necessarily mean the trial court would have abused its discretion by admitting the same testimony. Compare *Mor-*

*row v. H.E.B., Inc.*, 714 S.W.2d 297 (Tex. 1986), and *Yeldell v. Holiday Hills Retirement & Nursing Ctr., Inc.*, 701 S.W.2d 243, 246 (Tex.1985) (both upholding the trial court's discretion to exclude evidence), with *Gee*, 765 S.W.2d 394 (emphasizing trial court's discretion to admit testimony), and *Town of South Padre Island v. Jacobs*, 736 S.W.2d 134, 142–43 (Tex.App.—Corpus Christi 1986, writ denied) (upholding trial court's discretion to allow testimony where good cause shown). In *Morrow*, *Yeldell*, and *Gee*, good cause was not shown. Here, the trial court did not abuse its discretion in finding good cause was shown.

Culpepper Properties, Inc.'s first point of error is overruled.

■ Culpepper Properties, Inc. also complains that, on March 21, 1988, Mancorp's witness, Al Pasek, failed to appear for his deposition, and, therefore, should have been excluded from testifying at trial. This complaint has been waived. Although Culpepper Properties, Inc. raised the issue in a pre-trial motion to suppress Pasek's testimony, it did not object when Pasek testified at trial, as required by *Clark v. Trailways*, 774 S.W.2d 644 (Tex.1989).

Culpepper Properties, Inc.'s third point of error is overruled.

■ In its second point of error, Culpepper Properties, Inc. alleges the trial court's questioning of Orthold constituted an improper comment on the weight of Orthold's testimony. Culpepper Properties, Inc. cites no authority for the proposition. More importantly, Culpepper Properties, Inc. did not object to the court's questions at trial. Therefore, nothing is presented for review.

Culpepper Properties, Inc.'s second point of error is overruled.

■ In points of error four, five, and six, Culpepper Properties, Inc. argues that the court erroneously refused to submit special issues concerning its breach of warranty and DTPA claims, and the related damages issues. Both the warranty and DTPA actions were based upon Mancorp's alleged failure to perform in compliance with the construction contract. The jury found that Mancorp substantially performed the construction contract and did not breach the contract. Nonetheless, the jury awarded Culpepper Properties, Inc. an offset, for necessary repairs, of $289,376.90. This "remedial" measure of damages is appropriate in actions for breach of construction contracts when the contractor has substantially complied with the terms of the contract. *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 164 (Tex.1982).

■ Although Culpepper Properties, Inc.'s counterclaim raised three causes of action, it was entitled to only one recovery, because they were all based upon the same conduct. *Butler v. Joseph's Wine Shop, Inc.*, 633 S.W.2d 926, 933 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). However, in a DTPA case, if there is more than one appropriate *measure* of damages, the plaintiff may elect the method that provides the greater recovery. *Leyendecker & Assoc. v. Wechter*, 683 S.W.2d 369, 373 (Tex.1984); *Century 21 Page One Realty v. Naghad*, 760 S.W.2d 305, 309 (Tex. App.—Texarkana 1988, no writ). Culpepper Properties, Inc. complains that because the court refused to submit its requested DTPA issues, it was denied the opportunity to recover the greater damages, both direct and indirect, as well as three times the amount of actual damages.

The DTPA plaintiff may elect to submit any appropriate measure of damages supported by the evidence, *Brighton Homes, Inc. v. McAdams*, 737 S.W.2d 340, 342 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.), including related and reasonably necessary expenses. *Kish v. Van Note*, 692 S.W.2d 463, 466 (Tex.1985). The plaintiff may also submit issues on *all* appropriate measures of damages, and select the one offering the greatest recovery. *Kish v. Van Note*, 692 S.W.2d at 466; *see also Century 21 Page One Realty v. Naghad*, 760 S.W.2d at 309 (in suit over purchase of home, plaintiff could select damages for difference in value, which exceeded the damages for cost of repairs). "Actual damages" are not defined in the DTPA, and courts have continued to use

common law measures of actual damages in suits under the DTPA. *Kish v. Van Note,* 692 S.W.2d at 466; *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 939 (Tex.), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980).

In some instances, compensating the plaintiff for his total loss may require combining several different measures of damages. *Brighton Homes, Inc. v. McAdams,* 737 S.W.2d at 342. In *Brighton,* the evidence showed that the fair market value of the house was less than it would have been had it not had foundation and drainage problems. The appellate court held that because the cost of repair alone would not fully compensate plaintiffs for actual damages, the cost of repair was but one element of the actual damages.

■ Texas Rule of Civil Procedure 278 provides that failure to submit a question shall not be deemed a ground for reversal of the judgment unless its submission is requested in substantially correct wording. Culpepper Properties, Inc. requested a submission on remedial damages, which the jury found in the amount of $289,376.90. The only other submission on actual damages requested by Culpepper Properties, Inc. asked the jury to find:

> The amount of money, if paid today in cash, not including the cost to repair the defects in the First Bank Galleria, which would equal the damages suffered by Culpepper Properties.

This question does not correctly state the law as to any measure of damages to which Culpepper Properties, Inc. may have been entitled. *See* D. Bragg, P. Maxwell, J. Longley, *Texas Consumer Litigation,* §§ 10.19–10.19.05 (2d ed. Supp.1988). This requested issue would have allowed the jury to take into account anything it considered as constituting damages. It offered no instruction with regard to the elements of damage to be considered by the jury. While the DTPA does not oblige the plaintiff to submit any *particular* measure or element of damages, it does not relieve him of the burden of proving some ascertainable measure, and of guiding the jury's discretion with appropriate instruc-

tions on the measure(s) he has chosen. *Chrysler Corp. v. McMorries,* 657 S.W.2d 858, 861–64 (Tex.App.—Amarillo 1983, no writ).

■ Nor do we find evidence to support a finding of any damages except the cost of repairs. Culpepper Properties, Inc. did not present evidence of the value of the building as promised, as delivered, or as repaired. Culpepper only testified that he could not refinance, sell, or fully lease the building, and lost his $1 million cash investment when the lender foreclosed. Without evidence of the value of the building or the existing lease, there was no evidence from which the jury could have calculated "loss of bargain," diminished value, loss of profits, or any other measure of damages.

■ We hold that the court did not err in refusing to submit question 14b (quoted above) because it did not include a proper measure of actual damages. Therefore, with regard to Culpepper Properties, Inc.'s contention that it was denied the opportunity to elect the greatest recovery of actual damages, the failure to submit the warranty and DTPA liability issues constitutes harmless error. Tex.R.App.P. 81(b)(1). Moreover, even if the trial court had erroneously refused to submit a correctly worded question on damages, the error would be harmless because no evidence raised a fact issue on any measure of damages other than cost of repair, which Culpepper Properties, Inc. recovered.

■ We must next consider Culpepper Properties, Inc.'s complaint that it was denied its right under the DTPA to collect up to three times the actual damages. However, before a party is entitled to such additional damages, the jury must find that the offending party committed the proscribed acts knowingly. Tex.Bus. & Com. Code Ann. § 17.50(b)(1) (Vernon 1987).

> 'Knowingly' means *actual awareness* of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim or, in an action brought under Subdivision (2) of Subsection (a) of Section 17.50, actual *awareness* of the act or practice constituting the breach of

warranty, but actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

Tex.Bus. & Com.Code Ann. § 17.45(9) (Vernon 1987) (emphasis added).

On the other hand, "inadvertent" means negligent or careless, "a fault of inattention." B. Garner, *A Dictionary of Modern Legal Usage* 284 (1987). "Negligent" is a less culpable state of mind than "knowing." *See State v. Houdaille Indus., Inc.*, 632 S.W.2d 723, 726 n. 4 (Tex.1982). As defined by the Texas Supreme Court in *Brookhollow*, "substantially performed" was defined for the jury as follows:

> 'Substantially performed' means the contractor must have, *in good faith, intended to comply with the contract*, and shall have substantially done so in the sense that the defects are not outside of the terms of the contract and do not constitute a deviation from the general plan contemplated for the work, and are not so essential that the object of the parties in making the contract and its purpose cannot without difficulty be accomplished by remedying them. Such performance permits only such omissions or deviations from the contract as are *inadvertent and unintentional, are not due to bad faith*, do not impair the structure as a whole, and are remediable without doing material damage to other parts of the building in tearing down and reconstructing.

642 S.W.2d at 164–65 (emphasis added).

■ Therefore, to find "substantial performance," the jury necessarily found that Mancorp intended, in good faith, to comply with the contract, that any defects were not outside the terms of the contract, and that omissions or deviations were inadvertent, unintentional, and not due to bad faith. This is incompatible with the predicate for additional damages under the DTPA. In view of the jury's finding that any defects or omissions in the building were inadvertent, a "knowing" violation is precluded.

Thus, the failure to submit special issues on the warranty and DTPA claims was harmless error because it did not deprive Culpepper Properties, Inc. of a recovery of triple damages. Tex.R.App.P. 81(b)(1).

■ The last complaint by Culpepper Properties, Inc. as to damages relates to its inability to collect two times that portion of the actual damages that did not exceed one thousand dollars. Tex.Bus. & Com.Code Ann. § 17.50(b)(1). The award of such additional damages is not predicated on a jury submission. Once the jury has found a violation under the DTPA and awarded actual damages, the court *shall* award additional damages equal to two times that portion of the actual damages that does not exceed one thousand dollars. *Id.*

Culpepper Properties, Inc.'s DTPA liability issue, which the trial court refused, inquired whether Mancorp warranted that the building would be free of defects, and, if so, whether the warranty was breached. The construction contract between Mancorp and Culpepper Properties, Inc. expressly provided:

> The Contractor [Mancorp] *warrants* to the Owner [Culpepper Properties, Inc.] ... that all Work will be of good quality, *free from faults and defects....*

(Emphasis added.) The evidence is undisputed that Mancorp made such a warranty. The jury found there were $289,376.90 worth of faults or defects in the building, and assessed liability for those defects against Mancorp. Therefore, the trial court should have awarded Culpepper Properties, Inc. an additional $2000 toward its offset, pursuant to Tex.Bus. & Com. Code Ann. § 17.50(b)(1). We have the power to cure this error by reforming the judgment to reduce Mancorp's recovery by $2000, thus granting the same net relief as if Culpepper Properties, Inc. had recovered an additional $2000 as an offset. Tex.R. App.P. 80(b).

Points of error four and five are overruled. Point of error six is sustained only as to the award of two times that portion of the actual damages that does not exceed one thousand dollars. The remainder of point six is overruled.

In point of error 11, Culpepper Properties, Inc. complains about the court's denial of a special issue regarding the individual conditions precedent to final payment of the contract price. Specifically, Culpepper Properties, Inc. contends that the following special issue should have been submitted to the jury:

4. Do you find that the following conditions were met by Mancorp, Inc.?

Architects's approval of final certificate for payment? (yes/no)

Full performance of the contract? (yes/no)

Completion of the work? (yes/no)

■ The jury was asked whether Mancorp fully performed the contract, and it answered, "No." This was a finding in favor of Culpepper Properties, Inc. Therefore, there is no error as to the second alleged condition precedent.

■ In view of the jury's offset for necessary repairs, it plainly found that the work was not completed. This, also, was a finding in favor of Culpepper Properties, Inc. Thus, there is no error as to the third alleged condition.

■ Regarding the first alleged condition, the evidence was undisputed that the architect never signed the certificate of final completion. Thus, no jury finding was needed. The jury knew that fact when it found that Mancorp had not fully performed, but had substantially performed.

When a contractor has substantially performed a building contract, he is entitled to recover the full contract price less the cost of remedying those defects that are remediable.

*Vance v. My Apartment Steak House, Etc.,* 677 S.W.2d 480, 481 (Tex.1984).

Point of error 11 is overruled.

■ In point of error seven, Culpepper Properties, Inc. complains that the court improperly instructed the jury on the definition of "breach of contract." During the jury's deliberation, it sent a note to the court, inquiring as follows, "May we have a legal definition of the phrase 'breached its contract'?" The court instructed the jury as follows:

The word 'breach' is defined as a failure, without legal excuse, to perform a promise that forms a whole or a part of a contract.

Culpepper Properties, Inc. argues that this instruction constitutes harmful error because the jury had no definition of "legal excuse."

The record reflects that Culpepper Properties, Inc. requested an almost identical instruction. Therefore, we find that if there was error, it was harmless, invited, or both.

Point of error seven is overruled.

Culpepper Properties, Inc. argues, in points of error eight and nine, that there was overwhelming evidence that Mancorp breached its contract with Culpepper Properties, Inc., and that there was insufficient evidence to support the jury's finding that Mancorp did not breach the contract. In order to determine factual sufficiency, we must consider and weigh all of the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

It is the fact finder's function to judge the witnesses' credibility and the weight of their testimony, and to resolve conflicts or inconsistencies in the evidence. *Texas Employers Ins. Ass'n v. Alcantara,* 764 S.W.2d 865, 868 (Tex.App.—Texarkana 1989, n.w.h.). We will not substitute our judgment for the jury's if its findings are supported by some evidence of probative value and are not against the great weight and preponderance of the evidence. *Id.*

■ The jury found that Mancorp did not fully perform its contract with Culpepper Properties, Inc. However, it also found that Mancorp did not breach the contract, but substantially performed it. We have reviewed the evidence and testimony. We disagree with Culpepper Properties, Inc.'s argument that "[t]he evidence is undisputed that the building was not constructed in accordance with the plans

and specifications" of the contract. There is testimony that some of the problems may have been design flaws, as opposed to construction errors. Ample evidence can be found that Mancorp corrected many of the initial problems, and has attempted to correct any remaining defects. Expert testimony was presented as to currently existing problems, the procedures for repairing the problems, and the costs involved. Although over $289,000 of work remained, the total cost of the project exceeded $4 million.

It was for the jury to resolve the conflicts or inconsistencies in the evidence. We find that the verdict was not against the great weight and preponderance of the evidence.

Points of error eight and nine are overruled.

■■■ Culpepper Properties, Inc. argues, in point of error 10, that the jury's findings that Mancorp did not fully perform the contract, but did not breach it, are irreconcilable. Culpepper Properties, Inc. offers no authority for this proposition. In view of the jury's finding that Mancorp substantially performed the contract, we find no irreconcilable conflict. *See Vance v. My Apartment Steak House, Etc.*, 677 S.W.2d at 481.

Point of error 10 is overruled.

In point of error 12, Culpepper Properties, Inc. contends that the cumulative effect of the errors, detailed in points one through 11, constitute reversible error. In view of our findings with regard to points one through 11, point of error 12 is overruled.

We reform the judgment by reducing Mancorp's recovery by $2000 to reflect a judgment of $219,273.10.

The judgment is affirmed as reformed.

O'CONNOR, Justice, dissenting.

The jury found that Culpepper Properties, Inc. was the alter ego of John C. Culpepper, Jr. The trial court granted a motion to disregard the finding of alter ego, and entered judgment for Mancorp against Culpepper Properties, Inc. only. In

reviewing the trial court's action, the majority holds there was no evidence to support the jury's finding of alter ego. I respectfully disagree.

The majority holds that nothing in this case resembles the gross fraud that justified piercing the corporate veil in *Castleberry v. Branscum*, 721 S.W.2d 270 (Tex. 1986). The majority also holds there is no evidence that holding only the corporation liable would result in injustice or that the corporate defendant is unable to pay this judgment. Slip op. at 5. The majority ignores what this Court said in *Rose v. Intercontinental Bank, N.A.*, 705 S.W.2d 752, 755 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), that the use or misuse that a shareholder makes of the corporate form determines whether he will be insulated from personal liability.

A trial court cannot disregard the jury's finding of alter ego unless there was no evidence to support it. We must engage in the same analysis of the evidence that the trial court is required to make, and search the record to see if there is any evidence to support the jury's finding of alter ego. There are two steps to this analysis. First, we must segregate the evidence that is contrary to the finding from the evidence that supports the finding. Then, putting aside all evidence that is contrary to the finding, if we find more than a scintilla of evidence that supports the jury's finding, we must uphold the finding. *James v. Vigilant Ins. Co.*, 674 S.W.2d 925, 926 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.). In this process, we must consider the evidence in the light most favorable to the jury's finding. *Dowling v. NADW Marketing, Inc.*, 631 S.W.2d 726, 728 (Tex.1982). We must also draw every reasonable inference from the evidence to support the jury's finding. *Id.*

In analyzing the evidence, the majority makes all reasonable inferences in favor of the *judgment*, not the *verdict*. The inferences should be made to support the verdict, not the judgment. For example, the majority considers that there was "no evidence" that the bank account was used for any non-corporate purpose. In fact, there

was no evidence the account was used for any corporate purpose. Making the reasonable inferences from the evidence, we should infer that the account was a personal account, not that it was a corporate account.

For purposes of the issue of alter ego, there are three entities here: (1) Culpepper Properties, Inc., the corporation; (2) John Culpepper, Jr.; and (3) "Culpepper Properties," under which John Culpepper did business. We must assume, on this record, that when Culpepper operated under Culpepper Properties (with no designation of corporation), he was operating for himself, not the corporation.

The jury answered the following question:

Do you find that Defendant Culpepper Properties, Inc. was the alter ego of John C. Culpepper, Jr. during the relevant times of this lawsuit?

INSTRUCTION: "Alter ego": ˙ You are instructed that the corporation is the alter ego of an individual when there is such a unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice.

ANSWER: Yes

The majority said that "as a matter of law," the seven checks, "standing alone," constituted no evidence that the corporation was Culpepper's alter ego. I do not think the seven checks stand alone. On this record, I believe there is more than a scintilla of evidence to support the jury's finding that the corporation was the alter ego of John C. Culpepper, Jr. Here, in summary form, is that evidence:

1. John Culpepper did business under the corporate name of Culpepper Properties, Inc., and personally under the name Culpepper Properties.

2. Culpepper used a business card that said: "Culpepper Properties, John C. Culpepper, Jr., his self."

3. Culpepper owned 100% of Culpepper Properties, Inc. and was its president and one of its three directors. Culpepper's wife was one of the other directors.

4. Ryan Mortgage made the loan for the building to both Culpepper Properties, Inc. and Culpepper individually. Culpepper signed the construction loan agreement with Ryan Mortgage for Culpepper Properties, Inc. both as president of the corporation and individually. Culpepper personally guaranteed the loan.

5. Culpepper told Mancorp he was personally behind Culpepper Properties, Inc.'s project. Mancorp asked Ryan Mortgage, the lender, to confirm that Culpepper was personally behind the project, which Ryan Mortgage did.

6. Mancorp thought it was doing business with Culpepper, personally, and that Culpepper was personally paying for the job.

7. Mancorp submitted the proposal for the bank project to "Culpepper Properties," not Culpepper Properties, Inc. This supports Mancorp's contention that Culpepper was personally behind the project.

8. Culpepper signed five checks to pay Mancorp for the work on the project, totaling $1,727,469, on his personal account in the name of "John C. Culpepper, Jr." The second line on the check, in smaller print under Culpepper's name, said: "Bank Tower Project." Mancorp could reasonably conclude this was a personal account, not a corporate account, confirming that Culpepper was personally liable on the contract.

9. Culpepper was a licensed lawyer and, therefore, knew the consequences of not maintaining the corporate formalities for Culpepper Properties, Inc.

10. Culpepper did not hold formal board meetings for Culpepper Properties, Inc.; he just discussed matters in the office. Culpepper did not sign any formal resolution for Culpepper Properties, Inc. to enter into a contract to borrow money.

11. The only shareholders' meeting Culpepper held was to change officers or directors. Culpepper Properties, Inc. held four shareholders' meetings in 18 years.

12. Culpepper did not recall how often the corporate documents required shareholders' or board of directors' meetings.

13. Culpepper did not recall who holds which office in Culpepper Properties, Inc.

14. Culpepper develops some projects as Culpepper Properties, Inc. and others personally. Culpepper personally developed another large project in Bryan.

15. Culpepper signed orders for changes in the construction documents for Culpepper Properties, Inc. personally. Culpepper signed one change order that was in the name of "Culpepper Properties," not "Culpepper Properties, Inc." These change orders are the debt on which Mancorp brought this suit.

16. Culpepper Properties, Inc. did not pay Mancorp on the last draw request even though it had the funds to do so at one time.

17. Ryan Mortgage foreclosed on the bank building during the trial.

On this record, I would reinstate the finding of alter ego and amend the judgment to render it against John C. Culpepper, Jr.