MANCORP, INC., Appellant/Cross-Appellee,

v.

John C. CULPEPPER, Jr., Appellee,

and

CULPEPPER PROPERTIES, INC., Appellee/Cross-Appellant.

No. 01-88-00831-CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 10, 1992.

R. Scott Hogarty, Bill Jones, James W. Paulsen, Houston, for appellant.

James L. Wright, Andrew W. Austin, Eva Ramos, Austin, for appellee.

Before COHEN, O'CONNOR and PRICE [1], JJ.

## OPINION ON REMAND FROM THE TEXAS SUPREME COURT

COHEN, Justice.

On original submission, we affirmed the trial court's judgment. *Mancorp, Inc. v. Culpepper,* 781 S.W.2d 618 (Tex.App.—Houston [1st Dist.] 1989). We held that no evidence showed Culpepper Properties, Inc. was the alter ego of John C. Culpepper, Jr.; consequently, we held the trial court did not err in granting a judgment n.o.v., and in refusing to hold John C. Culpepper Jr. personally liable. Justice O'Connor dis-

sented. She would have held the trial judge erred in granting the judgment n.o.v. because legally sufficient evidence supported the jury's finding of alter ego. *Id.* at 628–30. The supreme court granted Mancorp's writ of error, held that the trial judge erred in granting the judgment n.o.v. because legally sufficient evidence supported the alter ego finding, reversed our judgment, and remanded the cause for us to rule on Mr. Culpepper's cross-points of error contending that the evidence was factually insufficient to support the alter ego finding. *Mancorp. Inc., v. Culpepper,* 802 S.W.2d 226, 231 (Tex.1990). Two justices dissented. *Id.* at 231–35. We now hold the evidence is factually insufficient to support the jury's finding of alter ego. Consequently, we sustain Culpepper's cross-points of error, and remand the cause to the district court for a new trial on the issue of alter ego.

■ In reviewing factual sufficiency, we reverse only if the evidence is "so against the great weight and preponderance of the evidence as to be manifestly unjust—this regardless of whether the record contains some 'evidence of probative force' in support of the verdict." *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Under the alter ego theory, courts disregard the corporate entity when there is such unity between the corporation and the individual that the corporation ceases to be separate *and* when holding only the corporation liable would promote injustice. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d at 228. Thus, in order for Mancorp to prevail upon its alter ego theory, it had to prove 1) unity between the corporation and Mr. Culpepper, and 2) that holding only the corporation liable would promote injustice. On original submission, we discussed only the legal sufficiency of the evidence showing the first element. On further consideration, we hold that the evidence set out in detail by the supreme court and by Justice O'Connor is factually sufficient to warrant the jury's finding of the first element, the

1. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

required unity between the corporation and Mr. Culpepper. 802 S.W.2d at 228–30; 781 S.W.2d at 629–30. Thus, we overrule Mr. Culpepper's cross-points of error, to that extent.

Because, on original submission, we found no evidence of the required unity between the corporation and the individual, we did not discuss the second element. We now focus on the other issue raised by Mr. Culpepper's cross-points, whether the evidence is factually sufficient to show that holding only the corporation liable would promote injustice.

The "injustice" to be avoided in alter ego cases is that of leaving the plaintiff with an uncollectible judgment against the corporation, while allowing its alter ego to go free. *Torregrossa v. Szelc*, 603 S.W.2d 803, 804–805 (Tex.1980); *Roy E. Thomas Const. Co. v. Arbs*, 692 S.W.2d 926, 937–39 (Tex. App.—Fort Worth 1985), *writ ref'd n.r.e. per curiam*, 700 S.W.2d 919 (Tex.1985). In reversing our judgment, the supreme court held that these facts constitute legally sufficient evidence of injustice. It wrote:

> Based on this evidence, a jury could reasonably infer that injustice would result if Culpepper was not held personally liable because Mancorp relied on Culpepper's misleading representations to the effect that he was backing the project. Moreover, the evidence of the mortgage company's foreclosure of the project and the fact that two of the project's creditors were unpaid could have led the jury to reasonably infer that Mancorp might go unpaid by Culpepper Properties, Inc., and this would result in injustice.

802 S.W.2d at 229. We must now decide whether there was factually sufficient evidence to support the jury's finding that holding only the corporation liable would result in injustice. *Id.* at 229 n. 3.

 The trial judge rendered judgment for Mancorp in the amount of $221,273.10 (the unpaid part of the contract price minus the offset), plus prejudgment interest of approximately $28,000, and attorney's fees of $69,000. This totals approximately $318,000.00. We have examined the record for evidence showing that Mancorp might go unpaid by Culpepper Properties, Inc. The only such evidence cited by Mancorp is that the construction lender foreclosed on the project and two project creditors were unpaid at the time of trial. This evidence, however, does not show that Culpepper Properties, Inc. could not pay the judgment.

Uncontroverted evidence showed that Culpepper Properties, Inc. was current in its monthly payments on its construction loan when the loan term expired, but it was unable to either sell the building or find a new lender. One reason Culpepper Properties, Inc. could not sell or refinance the building was that it leaked water and required other repairs; these were the repairs for which the jury awarded Culpepper Properties, Inc. an offset of $289,376.90. The construction loan was for $11,150,000.00, more than 35 times the amount of the judgment rendered for Mancorp. The foreclosure shows that Culpepper Properties, Inc. was either unable or unwilling to pay a debt totalling millions of dollars. It does not show that Culpepper Properties, Inc. was unable to pay a debt of $318,000.00. Moreover, Mancorp's brief states that the corporation "failed to pay Mancorp although it apparently had the funds to do so at one time," a fact noted on original submission. 781 S.W.2d at 630. Mr. Culpepper testified without contradiction that the only reason Culpepper Properties, Inc. refused to pay was that Mancorp did not properly perform the contract. No evidence showed Culpepper Properties, Inc. was undercapitalized. *See Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 376 (Tex. 1984).

Nor does the evidence about the two unpaid contractors show the corporation's inability to pay this judgment. No evidence shows the amount of either of these debts. John Culpepper testified that the debt to one of the two contractors had been "basically settled." That contractor was a nursery, and he testified that "we signed a note at the bank with them for payment." This was not rebutted, impeached, or contradicted. This shows that the corporation was still able and willing to borrow money

to pay its debts. The other contractor was a boring and tunneling company; there was no evidence of the amount owed to it or why it had not been paid. Thus, the existence of that unpaid debt does not show that the corporation could not pay this judgment. Finally, John Culpepper testified approximately $20,000.00 was owed to HKS, an architectural firm, but that HKS was not a contractor, that HKS had been paid more than $200,000.00 by the corporation, and that $20,000.00 was withheld because it was disputed. This testimony was not controverted. We conclude that evidence of the corporation's nonpayment of an unknown amount for unknown reasons to the boring and tunneling company, and its nonpayment of $20,000.00 in disputed debt to an architectural firm to which it had already paid more than $200,000.00, is not factually sufficient evidence that the corporation could not pay this judgment.

The foreclosure and the nonpayment of the architect, the nursery, and the tunneling contractor are the only evidence Mancorp cites to show the corporation cannot pay this judgment and thus, personal liability is required to prevent injustice. There is, however, other evidence affirmatively showing that the corporation owned assets whose value exceeded the amount of this judgment. Culpepper testified the corporation owned land under a restaurant just west of the property. He also testified it owned a separate tract of land adjacent to the motor bank portion of the property. Mr. Culpepper estimated the corporation's equity in the land under the restaurant at $250,000.00 to $300,000.00. He defined the term equity as meaning value over and above the indebtedness against the restaurant land. In addition, he testified that the corporation had $300,000.00 in notes available to use as collateral. He testified that the corporation had previously borrowed large amounts from banks and others and that credit was available to the corporation. He testified the corporation owned "a lot near the Hilton Hotel" and "another lot somewhere." In addition, he testified the corporation owned "16,000 shares or so" of Great West Savings Bank, a bank with offices in Dallas and Lubbock. Mr. Culpepper testified the corporation purchased the stock in 1984 or 1985 for cash, and that it was worth more at trial than when it was purchased. He could not remember the purchase price, but he considered it "a major investment" for the corporation. He testified that the corporation was actively negotiating a sale of the land under the restaurant. Mancorp does not contend that any of this testimony was controverted or impeached. We conclude that the jury finding in question four that holding only the corporation liable would result in injustice is not supported by factually sufficient evidence and is so against the great weight and preponderance of the evidence as to be manifestly unjust.

■ Mancorp, as plaintiff, had the burden of proof on the issue of alter ego. *Torregrossa v. Szelc*, 603 S.W.2d at 804. Texas courts act cautiously in piercing the corporate veil. *Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 374 (Tex.1984).

> The courts of this state have been reluctant to pierce the corporate veil and impose personal liability upon an individual, such as its chief executive officer and controlling stock holder, and thereby destroy an important fiction under which so much of the business of the country is conducted, and have done so only under compelling circumstances.

*Aztec Management and Inv. Co. v. McKenzie*, 709 S.W.2d 237, 239 (Tex.App.—Corpus Christi 1986, no writ).

> It is not possible to more emphatically express the necessity for a plaintiff to prove that he will suffer some type of harm or injustice by adhering of the corporate fiction before the corporate veil will be pierced. *Torregrossa* absolutely stands for the proposition that the burden of proof is on the plaintiff to prove harm in order to pierce the corporate veil.

*Roy E. Thomas Constr. Co. v. Arbs*, 692 S.W.2d at 938.

> [T]he overriding public policy necessary to disregard the corporate entity must be more stringent in contract cases than in

tort cases because in contract cases the plaintiff has an opportunity to select the entity with which he deals as opposed to tort cases in which no such choice exists.... In such a situation, a court should not resort to the drastic exception to the general rule that the corporate entity must remain inviolate.

*Hickman v. Rawls,* 638 S.W.2d 100, 102 (Tex.App.—Dallas 1982, writ ref'd n.r.e.).

The cross-points are sustained.

 The final issue is whether the case can be remanded for a new trial solely to determine whether holding only the corporation liable would result in injustice. We hold that such a limited remand is proper and desirable in this case.

Texas Rule of Appellate Procedure 81(b)(1) provides:

> No judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court; *and if it appears to the court that the error affects a part only of the matter in controversy and that such part is clearly separable without unfairness to the parties, the judgment shall only be reversed and a new trial ordered as to that part affected by such error, provided that a separate trial on unliquidated damages alone shall not be ordered if liability issues are contested.*

(Emphasis added.)

The error we have found affects only one part of the dispute, i.e., whether Mr. Culpepper is personally liable. This issue is "clearly separable without unfairness to the parties," who have already had a jury trial and three appellate opinions that determined all other issues. Mancorp should not have to prove its claim again. Another trial on the settled issues is unnecessary because the jury's erroneous finding on alter ego did not prejudice either Mr. Culpepper or Culpepper Properties, Inc. in presenting any of their other claims or defenses. Thus, the partial remand is sufficient to cure the harm from this particular error. The new trial will not be one to determine unliquidated damages, which rule 81(b)(1) prohibits if liability is contested. The damages are now liquidated, having been determined by judgment and upheld on appeal.

We remand to the district court Mancorp's cause of action against John Culpepper, individually, for a trial on the sole issue of whether holding only the corporation liable would result in injustice.