Jim Bill WILLIAMS, et ux, Appellants,

v.

T. R. BENNETT, Appellee.

No. 8260.

Court of Civil Appeals of Texas,
Beaumont.

May 17, 1979.

Rehearing Denied June 7, 1979.

Mike Gallagher, Houston, for appellants.

Ralph Zeleskey, Lufkin, for appellee.

KEITH, Justice.

Plaintiffs below appeal from a judgment non obstante veredicto entered in a jury trial on a medical malpractice suit, concerning the alleged wrongful discharge of Janette Williams from Memorial Hospital in Lufkin, Texas, and the alleged subsequent abandonment by defendant, Dr. T. R. Bennett.

Janette Williams was admitted to the hospital, where defendant performed a hysterectomy on her on December 17, 1974. Subsequently, she developed a spiking fever. It was obvious to defendant that plaintiff had an infection, but he was unable to find it. However, he treated her with several types of antibiotics. On December 24, defendant removed the bandage from plaintiff's incision, removed several of her sutures, and discovered that she had a subcutaneous abscess—a large amount of pus discharged from her incision. He removed half of her sutures and let the ab-

scess drain. He continued her on antibiotics and changed them until she responded to one and her temperature returned to within normal limits. He had taken cultures of the pus that came from the incision. On December 31, defendant decided to release plaintiff from the hospital—her temperature was normal and as of that date the cultures contained no growth. He told her to return to his office the next week for the removal of her other sutures. He did not give her any medication, either antibiotics or pain medication.

On January 1, 1975, the hospital lab sent a report on plaintiff's cultures to defendant; they contained a "rare microaerophilic gamma streptococci". Defendant testified that the term "rare" meant that the lab saw very few of these organisms growing, i. e., "[o]ne or two organisms per microscopic field", as opposed to the streptococci strain itself being unusual. Defendant never informed plaintiff of this report.

Plaintiff was to return to defendant's office on January 6 for the removal of her sutures, but a member of her family cancelled her appointment because of severely cold and rainy weather. On January 7, she went to her family doctor, Dr. Burch, because defendant was on vacation. Dr. Burch removed her remaining sutures and prescribed antibiotics and pain medication.

On January 10, plaintiff went to the emergency room at Woodland Heights Hospital in Lufkin, Texas, where she was treated by Dr. William Mitchell, who was "on call" for defendant. This doctor broke open several infectious abscesses at her incisional site and prescribed both pain medication and antibiotics to combat her infection.

For approximately forty-five days from the date of her discharge, plaintiff was in intense pain. But, she never returned to defendant's office. His receptionist and nurse tried to contact her, but no one answered the telephone. No one informed them that the phone was out-of-order. Several appointments were made on behalf of plaintiff with defendant's office, but they were either cancelled or she did not show for them. In the latter part of Janu-

ary, defendant had his secretary send her a letter to call the office and set up a post-operative examination. She called and made an appointment for January 28 but did not show for it. At trial, Mrs. Williams admitted that she never contacted defendant after her hospital dismissal because "I didn't want him to doctor me."

Plaintiff and her husband filed suit against defendant for wrongful discharge and abandonment. At trial, the jury found that defendant had discharged plaintiff from the hospital at a time when a reasonably prudent physician from the same or similar community acting under the same or similar circumstances in the exercise of ordinary care would not have done so (Special Issue No. 1); that such discharge was a proximate cause of her injuries (Special Issue No. 2); and that because of said discharge, she should receive damages in the amount of $20,000 for her past physical pain and mental anguish, $1,500 for the loss of her household services in the past, and $2,700 for the loss of her capacity to perform household services which, in reasonable probability, would be sustained in the future. The jury failed to find that defendant had abandoned plaintiff (Special Issue No. 3) and, consequently, did not have to reach Special Issue No. 4 on proximate cause. Defendant moved for a judgment non obstante veredicto, which the court granted on the ground that there was no evidence to support the jury's affirmative answer to Special Issue No. 1.

Plaintiffs appeal this judgment on two points of error. First, plaintiffs complain that the court erred in granting a judgment non obstante veredicto because the record contained ample evidence to support the jury's affirmative answer to Special Issue No. 1.

To sustain the action of a trial court in granting a motion for a judgment non obstante veredicto, we must find that there is no evidence upon which the jury could have made the findings relied upon. Therefore, we must consider the evidence in the light most favorable to the party against whom the motion is sought and every rea-

sonable intendment deducible from the evidence is indulged in that party's favor. *Douglass v. Panama, Inc.*, 504 S.W.2d 776, 777 (Tex.1974).

■ It is well-settled Texas law that a patient has no cause of action against his doctor for malpractice, either in diagnosis or treatment, unless he proves by a doctor of the same school of practice as the defendant that the diagnosis or treatment complained of was negligence and that it was a proximate cause of the patient's injuries. *Hart v. Van Zandt*, 399 S.W.2d 791, 797 (Tex.1965); *Bowles v. Bourdon*, 148 Tex. 1, 219 S.W.2d 779, 782 (1949); *Smith v. Guthrie*, 557 S.W.2d 163, 165 (Tex.Civ.App. —Fort Worth 1977, writ ref'd n. r. e.). This standard of care may be proven by the testimony of a doctor-defendant. *Wilson v. Scott*, 412 S.W.2d 299, 303 (Tex.1967); *Smith v. Guthrie*, supra; *Gaut v. Quast*, 505 S.W.2d 367, 369 (Tex.Civ.App.—Houston [14th Dist.]), writ ref'd n. r. e. per curiam, 510 S.W.2d 90 (Tex.1974).

Plaintiffs did not call any medical experts to testify, other than defendant. They contend that his testimony proved the standard of care he was required to use and that he failed to meet that standard. We disagree.

Defendant testified that it was bad medical practice to discharge a person from the hospital during a virulent infectious process. He further testified that it would not be in keeping with the standard of medical practice in his community to discharge a patient if she had a virulent infection and did not show other signs of responding to medical treatment.

■ Defendant's testimony did not establish that he failed to meet the standards to which he had testified. There is no proof that plaintiff had a virulent infection when she left the hospital. The January 1 lab report only showed that on December 25 she had such an infection. By December 31, plaintiff was recuperating normally according to defendant's discharge summary—she had no temperature, her bowel movements had resumed, she was eating, and she was ambulatory. Defendant consistently maintained throughout his entire testimony that plaintiff did not have an active infection on December 31 and that the abscess was sterile. He testified that based upon the medical standards of his community, it was his opinion that plaintiff was ready for discharge on December 31. Plaintiffs have presented us with no expert evidence to the contrary. There is no evidence to prove that the infection which she had on January 10 was related to her previous infection. Therefore, point of error one is overruled.

In their second point of error, plaintiffs complain that the jury's answer to the special issues on abandonment is against the great weight and preponderance of the evidence. We disagree.

The jury was instructed in the following manner:

"[T]he term 'abandonment' means the severance of the physician/patient relationship without reasonable and actual notice of the physician's intent to sever such a relationship at a time when there is a necessity for continuing medical care or alternatively the failure to provide for adequate medical attention in the event of the physician's unavailability at a time when there is a necessity for continuing medical care."

The jury was further instructed that "there can be no abandonment of a patient by a physician when the patient has voluntarily chosen not to return to his or her physician, or has discharged or dismissed his or her physician." See *Lee v. Dewbre*, 362 S.W.2d 900, 902 (Tex.Civ.App.—Amarillo 1962, no writ); *Hernandez v. Smith*, 552 F.2d 142, 146–47 n. 7 (5th Cir. 1977). See also Perdue, "The Law of Medical Malpractice—The Cause of Action", 11 *Hous.L.Rev. 1, 12–13 (1973)*.

■ Having reviewed the entire record [*Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965)], we find that the jury's answer was not against the great weight and preponderance of the evidence. It appears that there was a severance of the physician/patient relationship between Mrs. Williams and defendant, but it was caused by Mrs.

**580**

Williams, not defendant, who voluntarily chose not to return to defendant. Point of error two is overruled.

Having found no error, we affirm the judgment of the trial court.

AFFIRMED.