Jim Bill WILLIAMS, et ux., Petitioners,

v.

T. R. BENNETT, Respondent.

No. B–8638.

Supreme Court of Texas.

Dec. 10, 1980.

Rehearing Denied Jan. 21, 1981.

Fisher, Roch & Gallagher, Michael T. Gallagher and Ronald Wardell, Houston, for petitioners.

Zeleskey, Cornelius, Rogers, Hallmark & Hicks, Ralph M. Zeleskey and Paul Clark, Lufkin, for respondent.

BARROW, Justice.

This is a medical malpractice action. The trial court rendered a take–nothing judgment for respondent, Dr. T. R. Bennett, notwithstanding the jury verdict that he had negligently discharged petitioner, Janette Williams, from the hospital and that such discharge was a proximate cause of petitioners' injuries.[1] The court of civil appeals affirmed. 582 S.W.2d 577.

The question before us on this appeal is whether there is more than a scintilla of competent evidence to support the jury finding that Mrs. Williams was negligently discharged from the hospital by Dr. Bennett. We hold that there is and, accordingly, reverse the judgments of the courts below. We remand the cause direct to the trial court for a new trial on the merits.

█ To sustain the action of the trial court in granting respondent's motion for judgment notwithstanding the verdict, it must be determined that there is no evidence to support the jury findings. In making this determination we must review the record in the light most favorable to the jury findings considering only the evidence and inferences which support them, and rejecting the evidence and inferences contrary to the findings. *Dodd v. Texas Farm Products Co.*, 576 S.W.2d 812 (Tex.1979); *Douglass v. Panama, Inc.*, 504 S.W.2d 776 (Tex.1974).

On December 16, 1974, Janette Williams was admitted to the Lufkin Memorial Hospital for a total hysterectomy to be performed by Dr. Bennett. The operation was performed without incident; however, subsequent to the operation, Mrs. Williams developed a serious infection. Commencing on December 22, Mrs. Williams was in severe pain, her stomach was swollen, her temperature was spiked, and she developed a paralytic ileus. On December 23, Dr. Bennett removed part of the skin sutures which caused a large amount of foul smelling pus to discharge from the incision. An incisional abscess became obvious and it was opened by Dr. Bennett. Mrs. Williams was found to have an abnormal white blood count and also an abnormal hemoglobin count. All of these symptoms confirmed that she was suffering from a serious infection. On December 31, Mrs. Williams was discharged from the hospital by Dr. Bennett with instructions to return to his office in about a week for removal of the remainder of the sutures. The sutures were removed by another doctor and Dr. Bennett did not treat Mrs. Williams at any time after her discharge.

There is substantial lay testimony that Mrs. Williams was suffering from the symptoms of an active infection at the time of her discharge and that these symptoms continued. Her condition worsened until, on January 10, she was taken to the emergency room of another hospital where several abscesses in her stomach were opened and treated. There is evidence that she suffered from the aftereffects of the serious infection for several months.

---

1. Special Issue No. 1 as submitted provides:
   "Do you find from a preponderance of the evidence that the Defendant, T. R. Bennett, discharged the Plaintiff, Janette Williams, from the hospital at a time when a reasonably prudent physician from the same or similar community acting under the same or similar circumstances in the exercise of ordinary care would not have done so?"
   The jury answered "We do."
   "In connection with Special Issue No. 1, you are instructed that the standards of skill, care and learning applicable to medical practitioners are not matters within the common knowledge or experience of jurors or lay persons. These standards are within the special knowledge of experts in the field of medicine applicable to each medical practitioner. Therefore, the skill, care and judgment usually possessed and exercised by a medical practitioner in this or similar communities under like or similar circumstances is to be determined only on the testimony of expert medical witnesses."
   The jury found in response to Special Issue No. 3 that Dr. Bennett DID NOT abandon Mrs. Williams.

Dr. Bennett did not dispute that Mrs. Williams developed a serious infection in the incision by December 23, 1974. Although he was not able to identify the type of infection until after her discharge, he prescribed several antibiotic drugs in an effort to control the infection. It was his stated opinion that the infection process was in remission by December 31 and that Mrs. Williams was ready for discharge. He testified that this opinion was based largely on her normal temperature. He did not test the white blood count or hemoglobin count to confirm this opinion. Although Dr. Bennett had requested the hospital laboratory to obtain a culture from a smear from the infected area on December 23, he discharged Mrs. Williams before the infection was identified by the laboratory report of January 1, 1975, as a "rare microaerophilic gamma streptococci." He erroneously reported in the discharge summary of Mrs. Williams' hospital record that the "culture was negative."

Dr. Bennett was the only medical witness and the court of civil appeals affirmed the take–nothing judgment because he testified that in his opinion Mrs. Williams was ready for discharge on December 31. The court of civil appeals relied on well–settled Texas law that a patient has no cause of action against his doctor for malpractice, either in diagnosis or treatment, unless he proves by a doctor of the same school of practice as the defendant that the diagnosis or treatment complained of was negligence and that it was a proximate cause of the patient's injuries. *Hart v. Van Zandt*, 399 S.W.2d 791 (Tex.1965); *Bowles v. Bourdon*, 148 Tex. 1, 219 S.W.2d 779 (1949); *Smith v. Guthrie*, 557 S.W.2d 163 (Tex.Civ.App.–Fort Worth 1977, writ ref'd n. r. e.).

◼ We agree with the rule of law stated by the court of civil appeals. However, it is our opinion that there is some evidence to support the jury finding that Dr. Bennett violated the medical standard set by his own testimony. Dr. Bennett testified that it would be bad medical practice to dismiss a patient during the course of a virulent

infectious process. He thereby established the requisite standard of medical care by which his actions in discharging Mrs. Williams should be judged. Although Dr. Bennett denied that her infection was still active at the time of her discharge, there is competent evidence from other witnesses to support a contrary conclusion.

◼ It is well settled that while a lay person may not make a diagnosis, such person may give factual testimony as to the physical condition of the body. *Commercial Standard Insurance Company v. Allred*, 413 S.W.2d 910 (Tex.1967); *Shuffield v. Taylor*, 125 Tex. 601, 83 S.W.2d 955 (1935); *Maedgen v. Kolodny*, 384 S.W.2d 410 (Tex.Civ. App.–Houston 1964, writ ref'd n. r. e.). There is substantial lay testimony in the record concerning Mrs. Williams' physical condition at the time of her discharge. This testimony was given by her husband, two of her daughters and two close personal friends, all of whom spent much time with her in the hospital and at her home after she was discharged. There was testimony from these witnesses that, at the time of her discharge from the hospital, Mrs. Williams was still discharging substantial amounts of foul smelling pus from three open holes in her stomach. She was in such severe pain that she would cry out when even the bed was touched. Her stomach was swollen to the extent that she appeared to be in an advanced stage of pregnancy. She had knots on her stomach where subsequent abscesses were opened at the emergency room on January 10.

A virulent infection is defined as one which is actively poisonous or intensely noxious.[2] The lay testimony indicated that Mrs. Williams' physical condition reflected the symptoms of an actively poisonous infection at the time she was discharged from the hospital. Hence, there was support in the record for the jury finding that the infection was virulent at the time Mrs. Williams was discharged from the hospital. Under the medical standard established by the testimony of Dr. Bennett, Mrs. Williams

**2.** Random House Dictionary of the English Language (1967).

should not have been discharged on December 31.

We therefore conclude that the trial court and the court of civil appeals erred in holding that there was no evidence to support the jury verdict. Dr. Bennett, by cross-point in the court of civil appeals, urged that the jury's answers to Special Issues No. 1 and No. 2 were so against the great weight and preponderance of the evidence as to be manifestly unjust. This cross-point raises a factual insufficiency point which is within the exclusive jurisdiction of the court of civil appeals. In this situation, we would usually remand the cause to that court for disposition of that point. *Stanfield v. O'Boyle*, 462 S.W.2d 270 (Tex.1971). However, pursuant to the request of petitioners, we remand the cause direct to the trial court for a new trial on the merits. *Stodghill v. Texas Emp. Ins. Ass'n*, 582 S.W.2d 102 (Tex.1979).

The judgments of the courts below are reversed and the cause is remanded to the trial court for a new trial.