**WAL–MART STORES, INC., Appellant,**

v.

**Dorina HINOJOSA, Appellee.**

**No. 13–91–208–CV.**

Court of Appeals of Texas,
Corpus Christi.

March 5, 1992.

J. Preston Wrotenberry, Houston, for appellant.

Chester Gonzalez, Brownsville, for appellee.

Before NYE, C.J., and BISSETT[1] and SEERDEN, JJ.

## OPINION

BISSETT, Justice (Assigned).

This is an appeal by Wal–Mart Stores, Inc., defendant in the trial court, from a judgment notwithstanding the verdict in a personal injury case, which resulted in a judgment in favor of Dorina Hinojosa, plaintiff. We reverse and render.

On or about April 28, 1989, during normal business hours, Dorina Hinojosa, ("plaintiff") came into the business premises of Wal–Mart Stores, Inc. ("defendant"), occupied and maintained by defendant in Brownsville, Texas, as a discount store.

---

1. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

While in the store, plaintiff was injured when some full length mirrors fell on her while she was examining them. She alleged that on the occasion in question, defendant and its agents, servants and employees, who were at all times acting in the course and scope of their employment, were negligent toward her in the following respects:

1. In improperly stacking the mirrors on the particular display shelf even though Defendant knew or should have known that in doing so Defendant was creating an unreasonably dangerous condition for invitees on the premises.

2. In failing to inspect the premises in order to discover the dangerous condition created by the improperly stacked mirrors on display, such that Plaintiff and other invitees would likely touch in order to inspect the display items.

3. In failing to correct the dangerous condition which was created by the improperly stacked display items.

4. In failing to take preventive safety measures by placing safety fencing on the edge of the display shelf and thus preventing the mirrors from falling forward.

5. In failing to warn invitees, including Plaintiff, that a dangerous condition existed which required extra care to be taken by them in handling the items on display.

She further alleged that "each of the foregoing negligent acts and omissions, whether taken singularly or in any combination, was a proximate cause of Plaintiff's injuries and damages...."

In answer to jury questions presented in the court's charge, the jury found that defendant was not liable for the incident made the basis of this suit. The jury responded to the damage question due to the fact that it was not predicated on any of the liability questions contained in the charge. The total amount of damages as set out in the verdict was $47,000.

Thereafter, counsel for defendant moved that the judgment be rendered according to the jury verdict. Plaintiff filed a motion for judgment notwithstanding the verdict, alleging that there was no probative evidence to sustain the verdict. Plaintiff further requested that the court set aside each of the jury's responses pertaining to liability, and render a judgment for her in accordance with the damage findings. Defendant filed a response to plaintiff's motion for judgment notwithstanding the verdict requesting the court to deny plaintiff's motion and to render a take-nothing judgment based on the jury's responses. Thereafter, the court granted plaintiff's motion for judgment notwithstanding the verdict and remanded a judgment in favor of plaintiff in the amount of $47,000, together with pre-judgment interest compounded annually from November 30, 1989, until December 2, 1990; post-judgment interest from December 2, 1991, until the judgment is paid, and costs of court.

Defendant then filed a motion to set aside the judgment notwithstanding the jury's verdict and to render a take-nothing judgment, pursuant to Tex.R.Civ.P. 324(b) and 329(b). The trial court denied this motion without hearing on April 8, 1991.

Defendant contends in a single point of error that the trial court erred in granting plaintiff's motion for judgment notwithstanding the verdict and in refusing to render a take-nothing judgment based on the jury verdict. Defendant argues in this appeal that there is ample evidence which supports the jury's responses and that there is no evidence which supports the rendition of judgment notwithstanding the verdict. We agree.

The standard of review for this appeal is well-established. The trial court cannot render judgment notwithstanding the verdict unless there is *no evidence* to support one or more jury findings on issues necessary to liability. *Williams v. Bennett*, 610 S.W.2d 144, 145 (Tex.1980). In determining a "no evidence" question, an appellate court considers only that evidence and reasonable inferences therefrom that tend to support the jury findings, disregarding all contrary evidence and inferences. *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990). If more than a scintilla of evidence supports the

jury finding, it must be upheld. *Garcia v. Insurance Co. of Pa.*, 751 S.W.2d 857, 858 (Tex.1988) (per curiam). Appellate courts must consider the evidence and inferences as they tend to support the *verdict* and *not* with a view towards supporting the *judgment*. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227–228 (Tex.1990).

■ This is a premises liability case. Defendant was the occupier of the premises and plaintiff was an invitee. In order for an invitee to recover damages in an action against the occupier, the burden is on the invitee to prove: 1) that the occupier had actual or constructive knowledge of some condition on the premises that poses an unreasonable risk of harm to the invitee; 2) that the occupier did not exercise reasonable care to reduce or eliminate the risk; and 3) that the occupier's failure to use such care proximately caused injury or harm to the invitee. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295–296 (Tex. 1983).

■ The incident that gave rise to this lawsuit occurred on April 28, 1989, at approximately 4:30 p.m. The store had been open since 9:00 a.m. Just prior to the incident, Ms. Diana Rousett, a sister of plaintiff, walked through the area where full-length mirrors were displayed; she looked at herself, and did not notice anything unusual about "a bunch of mirrors stacked there."

Plaintiff entered the store for the purpose of shopping. She was looking for a full-length mirror and went to the area where the mirrors were displayed. She testified that "there were three rows of these (mirrors), one after another one, and it was standing up straight like that, all three rows." She further testified that in each row there were many mirrors stacked back to back, and "were sitting on that little rack, about a foot away from the floor," and nothing was holding them back. In describing what happened when she started to look for the price of the mirrors, she said:

I looked at them in the first row and I touched, of course, it would be this corner, and mostly for the price of the glass, and I didn't see anything so I went for the first one; and pulled it toward me. There was nothing on the second one. When I did the third one, the second one started flipping and then the third row. So I stuck my right arm to try to stop them, but the first row started flipping towards me and I couldn't hold them back.

When asked "So why didn't you just let the mirrors fall, Dorina?," plaintiff answered:

Because I was scared I was going to get blamed for dropping them, that's why.

Plaintiff stated on cross-examination that when she approached the mirrors she did not notice anything unusual or dangerous about them, and did not think that they would fall.

There were no witnesses to the incident.

Mr. Antonio Rodriguez, the manager of defendant's store in Brownsville, stated that he had been employed at the store for nine years, had been manager for the preceding four years, and there had never been an incident before the one in question where the mirrors had fallen. In addition, he stated that the mirrors were stacked in such a manner that they would not fall forward. He testified that all merchandise is inspected in the morning and throughout the day to make sure there is nothing out of line and the employees are instructed to correct anything that may be wrong. In addition, during the day the employees do "zone defense" at the store to make sure nothing is out of line. He further testified that store personnel are constantly going through areas to check merchandise throughout the day to make the store "as safe as possible for the customers."

Mr. Rodriguez, in response to questions asked, also testified:

Q. How would you instruct your store employee to stock (sic) that mirror so that it is properly placed and not fall forward?

A. Just to stock (sic) them on the shelf and make sure that they don't put so many that they fall forward by themselves.

Q. Okay, or by someone touching them, inspecting them, right?

A. To a certain extent, yes sir.

Q. Would that be to stock (sic) them at an angle and not too straight?

A. It needs some kind of lean, yes.

Q. So therefore, had Wal–Mart properly stocked (sic) those mirrors ... at an angle like you just saw me place that mirror against the safety fencing, then the merchandise would not have fallen over, right?

A. It depends, sir. If you are going to touch them from back far enough, when you push them forward, then it's going to come towards you. When you push it forward, then you've got to push it back. If you don't, if you've got it straight, if you let it go, it's going to come toward you.

Q. But the fact that you are really at Wal–Mart by your statement was improperly stocking (sic) merchandise, right?

A. It wasn't improperly stocked (sic) sir. It could have been stocked (sic) back a little, leaning a little more, and it would have been safer.

He also stated that "the mirrors were safe until Mrs. Hinojosa got there."

Mr. Rodriguez further told the jury that the safety committee of defendant, which had been formed to identify problem areas, never identified the manner in which the mirrors were stacked as being dangerous or as presenting an unreasonable risk of harm to the store's customers.

Question No. 1, and the jury's answer thereto, read:

> Do you find from a preponderance of the evidence that on the occasion in question, the mirrors in Wal-mart presented an unreasonable risk of harm?

(Answer "Yes" or "No".)

We, the jury, answer: 12 No

The court's charge included this explanatory instruction:

> You are instructed that a "CONDITION PRESENTING AN UNREASONABLE RISK OF HARM: is one in which there is sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen that it or some similar event would be likely to occur.

Question No. 2 read:

> Do you find from a preponderance of the evidence that Wal–Mart knew, or in the exercise of ordinary care should have known, that the mirrors presented an unreasonable risk of harm?

(Answer "Yes" or "No".)

We the jury answer: _____

The court defined ordinary care as follows: "Ordinary care" means that degree of care which would be used by a person of ordinary prudence under the same or similar circumstances.

In accordance with the court's instructions, the jury did not answer Question No. 2 having found that the condition complained about by plaintiff did not pose an unreasonable risk of harm in response to Question No. 1.

Question No. 3, and the jury's answer thereto read:

> Do you find from a preponderance of the evidence that Wal–Mart's failure to eliminate or reduce the risk from the mirrors was negligence?

(Answer "Yes" or "No".)

We, the jury answer No.

Plaintiff did not object to the court's charge to the jury, nor did she file a motion for an instructed verdict.

One of the elements in this premises liability case which plaintiff was required to prove in order to recover in her action against defendant was a finding that defendant, the premises occupier, knew, or should have known, of the dangerous condition. It is clear from the testimony of Mr. Rodriguez that defendant did not have any knowledge, actual or constructive, that a dangerous condition existed, if, in fact, it did exist. His testimony, standing alone, constituted more than a scintilla of evidence by which the fact finder could conclude that the mirrors did not present an unreasonable risk of harm. Moreover, as noted, the jury did not return an affirma-

tive answer to Question No. 2, which inquired about the actual or constructive knowledge of defendant that the mirrors presented an unreasonable risk of harm.

It was not until after plaintiff began "flipping" through the mirrors that the mirrors fell. She set in motion a force (by pulling the first and second rows of mirrors toward her), which caused all three rows (stacks) to fall.

The trial court wrongfully set aside all responses by the jury to the liability issues. There is much more than a mere scintilla of evidence to support the jury's finding that the mirrors did not present an unreasonable risk of harm. The trial court reversibly erred in disregarding the jury's finding in response to Question No. 1 and to Question No. 3, and in rendering judgment for plaintiff notwithstanding the verdict of the jury.

The judgment of the trial is reversed and judgment is rendered that plaintiff take nothing in her suit against defendant.