WAL–MART STORES, INC., Appellant,

v.

Marie BOLADO, Appellee.

No. 13–00–085–CV.

Court of Appeals of Texas,
Corpus Christi.

Aug. 23, 2001.

Kevin D. Jewell, Steven J. Knight, Magenheim, Bateman & Helfand, Houston, Shirley J. Gray, Drabek & Associates, Harlingen, for Appellant.

Janice A. Cassidy, San Benito, for Appellee.

Before Justices HINOJOSA, CASTILLO, and AMIDEI.[1]

## OPINION

HINOJOSA, Justice.

This is an appeal from the trial court's order granting appellee, Marie Bolado ("Bolado"), a judgment notwithstanding the jury's verdict. In three issues, appellant, Wal–Mart Stores, Inc. ("Wal–Mart"), contends the trial court erred: (1) in granting Bolado's motion for a judgment notwithstanding the verdict because the record contains legally sufficient evidence to support the jury's finding that Wal–Mart was not negligent; (2) in rendering a judgment for money damages because

1. Former Justice Maurice Amidei, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

damages were not determined by the jury; and (3) in rendering a judgment for loss of future earning capacity because there is no evidence to support such an award. We reverse and render.

A. BACKGROUND AND PROCEDURAL HISTORY

On or about January 30, 1995, Bolado went into the Harlingen Wal–Mart store. Bolado alleged she was injured when she "was caused to trip, stumble and fall" on a floor mat. She claimed that on the occasion in question, defendant and its agents, servants, and employees, who were at all times acting in the course and scope of their employment, were negligent toward her in:

(a) allowing the defective floor mat in the area where customers walk to become a dangerous and defective condition;

(b) failing to post warnings of the dangerous and defective condition then and there in existence;

(c) creating a dangerous and defective condition that posed an unreasonable risk of harm to [Bolado], namely, a defective floor mat;

(d) failing to supervise personnel in maintaining the area in question;

(e) failing to properly train and instruct personnel in floor maintenance so as to avoid the dangerous and defective condition present;

(f) failing to inspect the floor area in question to ensure against the dangerous and defective condition then and there in existence;

(g) causing the defective floor mat to be present in the customer walkway area in question; and

(h) failing to exercise reasonable care to reduce or eliminate the risk in question.

Bolado further alleged that as a
proximate cause of the foregoing conduct of [Wal–Mart], [she] sustained severe personal injuries in and about her head, body and limbs, emotional tension and distress and severe shock to her nerves and nervous system and anxiety, all of which cause her great pain and suffering, disability, and all of which have continued from the date of injury to date and may and probably will continue into the future to her financial detriment and loss for which [she] seeks compensation.

The case was tried to a jury beginning August 4, 1999. After hearing all the evidence, the jury found that Wal–Mart was not at fault. In Question No. 1 of the court's charge the jury was asked and answered:

Did the negligence, if any, of any person or entity named below proximately cause the occurrence or injury in question?

With respect to the condition of the premises, Wal–Mart Stores, Inc. was negligent if—

(a) the condition posed an unreasonable risk of harm, and

(b) Wal–Mart Stores, Inc. knew or reasonably should have known of the danger, and

(c) Wal–Mart Stores, Inc. failed to exercise ordinary care to protect Marie Bolado from the danger, by both failing to adequately warn Marie Bolado of the condition and failing to make that condition reasonably safe.

"Ordinary care" when used with respect to the conduct of Wal–Mart Stores, Inc. as the owner or occupier of a premises, means that degree of care that would be used by an owner or occupier of ordinary prudence under the same or similar circumstance.

"Negligence," when used with respect to the conduct of Marie Bolado means failure to use ordinary care, that is, failure to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care," when used with respect to the conduct of Marie Bolado, means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

Answer "Yes" or "No."

(a) Wal–Mart Stores, Inc.     *NO*

(b) Marie Bolado     *YES*

If you have answered "no" to subsection "b", do not answer Question No. 2. Go directly to Question No. 3.

If you have answered "no" to subsection "a", sign the jury verdict and do not answer any further questions.

If you have answered "Yes" to both subsections (a) and (b) of Question No. 1, then answer Question No. 2; otherwise do not answer Question No. 2.

The jury followed the court's instructions and did not answer Question No. 2, concerning the percentage of negligence, and Question No. 3, regarding damages.

The trial court signed a take-nothing judgment in favor of Wal–Mart on September 24, 1999. On October 20, 1999, Bolado filed a "Motion for Judgment Notwithstanding the Verdict and, alternatively, Motion for New Trial." Bolado asserted she had produced evidence at the trial which:

showed that the mat was curled up where the tape had become loose and was dirty thus causing a hazard to [Bolado]. [Bolado] introduced competent evidence that ... the condition posed an unreasonable risk of harm to [Bolado] and that [Wal–Mart] knew or reasonably should have known of the danger, and that [Wal–Mart] failed to exercise ordinary care to protect [Bolado] from the danger by both failing to adequately warn [Bolado] of the condition and failing to make that condition reasonably safe.

In its response, Wal–Mart argued that Bolado's motion for a judgment notwithstanding the verdict ignored the evidence presented at trial which contradicted her assertions.

The trial court heard the motion on November 19, 1999, and by letter dated November 30, 1999, advised the parties that it would grant the motion for a judgment notwithstanding the verdict. On December 7, 1999, Wal–Mart filed a motion for "Reconsideration of the Court's Order Granting [Bolado's] Motion for Judgment Notwithstanding the Verdict." On January 7, 2000, the trial court signed an order granting Bolado's motion for a judgment notwithstanding the verdict and a judgment in favor of Bolado for $59,151.83.[2]

### B.  STANDARD OF REVIEW

■ This is a premises liability case. Wal–Mart was the occupier of the premises and Bolado was an invitee. In order for an invitee to recover damages in an action against the occupier, the burden is on the invitee to prove: (1) that the occupier had

**2.** According to the judgment, the amount of $59,151.83 is for the following damages: (1) $6,735.83 for medical expenses, (2) $52,416.00 for future loss of earning capacity, and (3) $0.00 for pain and suffering. In addition to the $59,151.83 judgment, the trial court awarded prejudgment interest at the rate of ten percent per annum from January 30, 1997 until the date of the judgment and post-judgment interest at rate of ten percent per annum from the date of the judgment until paid.

actual or constructive knowledge of some condition on the premises that poses an unreasonable risk of harm to the invitee; (2) that the occupier did not exercise reasonable care to reduce or eliminate the risk; and (3) that the occupier's failure to use such care proximately caused injury or harm to the invitee. *CMH Homes, Inc. v. Daenen,* 15 S.W.3d 97, 99 (Tex.2000); *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 295–96 (Tex.1983); *M. Rivas Enters., Inc. v. Gaytan,* 24 S.W.3d 402, 404 (Tex. App.—Corpus Christi 2000, pet. denied).

■ A trial court may disregard a jury's findings and grant a motion for a judgment notwithstanding the verdict only when there is no evidence upon which the jury could have made its findings. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990); *Wal–Mart Stores, Inc. v. Hinojosa,* 827 S.W.2d 43, 44 (Tex.App.—Corpus Christi 1992, no writ). In other words, a trial court may render a judgment notwithstanding the verdict if a directed verdict would have been proper. TEX.R. CIV. P. 301; *Fort Bend County Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 394 (Tex.1991).

■ In reviewing a judgment notwithstanding the verdict, we determine whether there is any evidence upon which the jury could have made its finding. We review the record in the light most favorable to the party in whose favor the jury's verdict has been rendered, and indulge in that party's favor every reasonable inference deducible from the evidence. *Formosa Plastics v. Presidio Engineers,* 960 S.W.2d 41, 48 (Tex.1998). If there is more than a scintilla of competent evidence to support the jury's finding, we will reverse the judgment notwithstanding the verdict.

*Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989). The evidence supporting a finding amounts to more than a scintilla if reasonable minds could arrive at the finding given the facts proved in the particular case. *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995). Appellate courts must consider the evidence and inferences as they tend to support the jury's verdict and not with a view towards supporting the trial court's judgment. *Mancorp, Inc.,* 802 S.W.2d at 227–28; *Hinojosa,* 827 S.W.2d at 45.

## C. ANALYSIS

■ In its first issue, Wal–Mart complains that the trial court erred in granting Bolado's motion for a judgment notwithstanding the verdict because Wal–Mart presented legally sufficient evidence to support the jury's finding that Wal–Mart was not negligent. Wal–Mart contends the jury could reasonably conclude that the mat did not constitute an unreasonably dangerous condition.

The incident that gave rise to this lawsuit occurred on January 30, 1995, at approximately 4:30 p.m. As Bolado was walking with a cart along "action alley," [3] she fell "flat, right flat on [her] stomach, and [her] arms and everything, and the basket was flying away." Bolado testified:

> I remember that they had like a carpet, you know, and it had these little edges that are rubber. And then they had this gray tape that was on the carpet and then on the concrete. And what happened was that this had rolled because of the dirt that was under the carpet or the tape. The tape was full of dirt, so that thing had rolled up.... That's

---

**3.** "Action alley," also referred to as the "bowling alley," is a heavy-traffic area that is open for customers to be able to move through the store. It is usually wider than most other aisles within the store. In this case, it is the area between the check-out stands and the clothing aisles.

where my foot got caught.... I saw the carpet, this tape that was on this carpet. And I know about this tape because I use it, so I know about it. And this tape, part of the tape is on the rubber part and the other part is on the concrete. And this was concrete.... Concrete floor it was. And the dirt gets in there, so this tape doesn't hold very long. So I looked. I wanted to see what had happened here to me, why had I fallen. And we all looked at it and we all saw it. It had dirt. The tape had dirt. It does that. Like you can't go over it 600 times and all this. You can't do that.

When asked about condensation from the air conditioning ducts, and whether she slipped on water, Bolado stated, "my foot got caught on that mat.... I don't remember any water."[4]

On cross-examination, Bolado was asked:

Q. Now, when you were asked what happened by whoever asked you, Rick Lopez or the lady or anyone else, do you recall telling them that you slipped on the mat?

A: What do you mean, slipped?

Q: Was that your words, "I slipped on the mat"?

A: Well, my foot got caught on it. That's why I fell.

Q: Why did you tell them you slipped on the mat?

A: Well, I guess at that time I didn't know what they were talking about and, like I say, I was not—you know, I was in shock, and everybody was asking me all these questions and everybody was looking at me. All I wanted to do was, you know, just go.

Q: Okay. Now, you said that you looked at the mat and you saw it was—tell me again what you saw when you looked at it.

A: The mat when it was on concrete and that rubber, you know, it pulls up because it's got this—all the dirt there.

Q: The mats weren't taped down?

A: It's not that big of a tape. The tape was rolled up. That's where my foot got caught.

Q: Okay. I'm sorry, that's where I'm getting confused. Was the mat rolled up or just the tape?

A: Well, the tape was off of the concrete so therefore it was both.

Q: Oh, the mat actually rolled up because the tape came loose; is that what you're telling me?

A: The tape came loose and the tape was rolled up, and I didn't see the rubber on the carpet. I didn't see it.

Q: I'm sorry, I'm confused now. The tape was holding down the edge of the mat, and are you saying that the tape had rolled up?

A: That's right.

Q: And the mat had kind of also or just the tape?

A: The tape had rolled up so that the mat was not stuck to the concrete.

Q: Oh, okay. And did your foot go under the mat?

A: My foot got caught in it.

Rose Messick, the store's assistant manager, testified that she responded to the

---

4. There was testimony throughout the trial that an air conditioning unit had been dripping water, off and on, and the mat in question had been placed on the floor to absorb any water droplets.

"code white"[5] within minutes; when she arrived at the scene of the accident, Rick Lopez, a support manager also responsible for risk management, was there speaking with Bolado. During Messick's testimony, Wal–Mart introduced the store's incident report which stated that Bolado had said she was "walking by front check-outs and slipped on carpet and fell on carpet on— and hurt her right arm." The report further stated that Wal–Mart's version of what happened was the same as Bolado's. Messick testified she recalled Bolado "saying that she just—that she slipped and fell," and that she could not recall Bolado saying anything about the "tape on the rug being peeled up or the rug being peeled up or anything of that nature." Messick also said she did not remember checking the carpet after the accident. She testified that the mat was placed on the floor because condensation build-up on an air conditioning duct was dripping "now and then." Messick described the mat as:

> the kind of mat that . . . the cashiers use to stand on when they are behind the register. It helps with their back. You know, it's a cushiony mat, so that it's made to absorb liquid, is why we put it . . . it was taped on the floor . . . it's straight and then it kind of tapers down . . . on the end.

The mat adheres to the floor; it is a "nonskid" mat. It is taped on the edges so that it will stay on the floor as an "extra added precaution." Messick said that after this incident, the gray mat was not removed from the floor and that if, in fact, something had been wrong with the mat, such as the tape being curled back and dirty, it would have been taken up and replaced.

Kevin Wagner, the store's director at the time of the accident, testified that the mat was "rolled down on the floor, and then we took silver duct tape and taped [it] to the floor." He stated that the policy of checking the mats was "management was on the floor at all times, and if at any time they noticed that the mats were coming up or that their tape was off, they were-I mean, they would go get somebody to get some duct tape on."

Rick Lopez, the store's support manager, took the incident report from Bolado when he arrived at the accident scene. He testified that when he arrived, Eloy Flores, an employee, and a customer named Jack were there. He also said that Veronica Cisneros, a cashier, took Bolado to the hospital. When asked what he saw when he looked at the mat where Bolado said she fell, Lopez testified:

A: I saw the mats. I didn't see any defects in the mats.

Q: What about the tape?

A: The tape was there. I mean you couldn't tell if the things were peeling off or anything. That's the last thing I remember.

Q: You couldn't tell if it was peeling off?

A: No, ma'am.

Q: Did you get down and look at it?

A: Yes, ma'am.

Q: Did you lift it off the floor?

A: No, I don't remember.

Q: Was it stuck to the floor?

A: It was stuck to the floor.

Q: And you're telling us that you didn't see any dirt on the tape?

A: I didn't see any dirt on the tape.

---

5. An announcement of "code white" on the store's public address system alerts Wal–Mart personnel that an accident has occurred.

Q: And you didn't see the mat rolled up?

A: No, ma'am.

Lopez said they placed tape on the mats so that "nobody can remove them or maybe with the shopping carts ... just to make sure that the thing doesn't move around or anything with the shopping carts." He reiterated that he got down onto the floor and looked at the tape on this particular mat after the accident and he did not see any defects, the tape was stuck to the mat and to the floor, and it was not rolled up.

Veronica Cisneros, a cashier at the time of the incident,[6] testified that she had been fixing the shelves located near her register when she "heard a little bit of commotion in back of me and heard a thump." She said that another employee, Eloy Flores, had seen Bolado fall and told her that Bolado "tripped on the mat.... He was walking in back of her, and he saw her foot kind of like hit under the mat, and she fell." Cisneros testified that she went to look at the mat before Rose Messick came to the front of the store and, "it was a little curled up on the side, in the corner, and the tape was dirty. And it was a little bit—like it was duct tape, so it was a little bit rolled up and it looked like it had dirt, like it couldn't stick on the floor." She said that the right-hand bottom corner of the mat, where Bolado fell, was not stuck to the floor.

### D. Conclusion

Because this is a premises liability case, Bolado was required to prove and obtain a

jury finding that Wal–Mart knew, or should have known, of the dangerous condition. Lopez and Messick testified that Wal–Mart did not have any knowledge, actual or constructive, that a dangerous condition existed, if, in fact, it did exist.[7] Lopez testified he got on the ground and looked at the mat after the incident and that he "didn't see any defects in the mats" or the tape. This testimony, standing alone, constitutes more than a scintilla of competent evidence from which the jury could conclude that the mat did not present an unreasonable risk of harm.

Because there is more than a scintilla of competent evidence to support the jury's finding that Wal–Mart was not negligent, we hold the trial court erred in granting Bolado's motion for a judgment notwithstanding the jury's verdict. Accordingly, we sustain Wal–Mart's first issue.

Because we have sustained Wal–Mart's first issue, it is not necessary to address its two remaining issues on damages. TEX. R.APP. P. 47.1; *Bradleys' Elec., Inc. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677 (Tex.1999) (explaining that generally, when a party presents multiple grounds for reversal of a judgment on appeal, appellate courts should first address issues that would require rendition).

We reverse the trial court's judgment and render judgment that Bolado take nothing against Wal–Mart.

---

6. Cisneros had since been fired for excessive absences.

7. *See CMH Homes, Inc. v. Daenen,* 15 S.W.3d 97, 102–03 (Tex.2000) ("Constructive knowledge is a substitute in the law for actual knowledge. In premises cases, constructive knowledge can be established by showing that the condition had existed long enough for the owner or occupier to have discovered it upon reasonable inspection. To impose constructive knowledge when the owner or occupier did not have actual knowledge and would not have discovered the dangerous condition from a reasonable inspection is to dramatically alter premise liability law.").