

# NUMBER 13-23-00564-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CLIFFORD LUTTRELL, DDS AND
BOERNE DENTAL CENTER, PLLC,                              Appellants,

v.

AMY MULROY,                                               Appellee.

## ON APPEAL FROM THE 73RD DISTRICT COURT
## OF BEXAR COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Justices Silva, Peña, and West**
**Memorandum Opinion by Justice West**

Appellants Clifford Luttrell, DDS (Dr. Luttrell) and Boerne Dental Center, PLLC, appeal the trial court's denial of their motion for judgment notwithstanding the verdict. Appellee Amy Mulroy filed a medical malpractice lawsuit against appellants and the jury awarded damages totaling $131,358.66. Appellants argue that the trial court erred when

it denied their motion for judgment notwithstanding the verdict because there was legally insufficient evidence to prove (1) standard of care and (2) proximate cause. Appellant Boerne Dental Center also argues that it is not liable under a respondeat superior or vicarious liability theory because the former issues render Dr. Luttrell not liable. We affirm.[1]

## I.    BACKGROUND

On September 20, 2021, appellee filed suit against appellants for medical malpractice arising from the negligent and improper treatment of appellee when she sought treatment for restoration of her teeth due to a malocclusion.

At trial, appellee did not call her own expert. Rather, she called Dr. Luttrell and appellants' expert, Joseph Simon Boyle, DDS (Dr. Boyle), to testify during her case in chief. Dr. Luttrell testified that it is "the dentist's job, and sole job, to make sure that the dental bur [—] is properly seated and secured" into a dental handpiece. He further testified that operation of a dental handpiece was "self-explanatory" and provided the following: "I did not . . . know there was an instruction manual for the high-speed handpiece any more than I knew there was an instruction manual for the light switch on my dental light." He described his training on the specific style of handpiece at issue as follows: "the salesmen probably came by, handed me the handpiece, and goes, 'Look how easy this is. Push the button and stick it in.' So, there was my training." He further testified that after a bur is placed in the handpiece, "you tug on it" and "you spin the handpiece." He testified that

---

[1] This appeal was transferred from the Fourth Court of Appeals in San Antonio pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001(a).

the handpiece should be taken out of service if there is any "malfunction[,] . . . wobble[,] . . . vibration[,] or it doesn't function like it normally does."

Dr. Luttrell testified that he has "no specific memory" of his "process of placement of the bur into the handpiece" related to providing dental treatment to appellee. However, he testified, "I started to work on [appellee's] first tooth . . . and the vibration of the—the bur wiggled," before the bur fell into appellee's mouth. Dr. Luttrell further testified that the bur landed in "the back of [appellee's] tongue . . . lodged between the tongue and the throat . . . [the] worst possible place." Dr. Luttrell testified that while patients are "laying back" in the "very uncomfortable position" of a dental chair, "there is a very strong tendency to want to swallow." According to Dr. Luttrell and his dental assistant, they told appellee not to swallow. Dr. Luttrell and his dental assistant testified that Dr. Luttrell directed the dental assistant to remove the remaining items from appellee's mouth (including a suction straw and a mouth mirror), and Dr. Luttrell turned around to retrieve cotton forceps. Dr. Luttrell testified that when he turned back to appellee, she was no longer lying down in the dental chair but was sitting upright and had swallowed the bur.

Dr. Luttrell testified that the dental bur shank could have been improperly sized by the manufacturer. But Dr. Boyle testified that an improperly sized dental bur shank would have been noticeable to the practitioner upon inserting it in a handpiece because you can "feel it, like you move it, you see it slip."

Dr. Luttrell testified that, following the incident involving appellee, he had no reason to believe the handpiece was defective "[a]s far as [he] could tell." He did not take the handpiece out of service, he continued using the handpiece thereafter on other patients

3

with no issue, and he did not know which of his handpieces was actually used when caring for appellee. Dr. Boyle testified that, after the incident at issue, the handpiece should have been taken out of service. Dr. Luttrell relatedly testified, "I don't disagree with him, necessarily."

Additionally, Dr. Boyle testified that he has experienced dental burs fall out of his handpiece and onto his dental tray. Similarly, Dr. Luttrell's dental assistant testified that she has observed dental burs fall out of handpieces. Dr. Boyle also testified that he has dropped dental crowns and dental screwdrivers into the mouths of patients, resulting in those items being swallowed.

In the days after the bur was swallowed by appellee, x-rays were performed to locate the bur. The first two x-rays showed the bur in the small intestines. A subsequent CT scan showed the bur in the mesentery, an organ that surrounds other gut organs and holds them in place. The bur ultimately became lodged in appellee's appendix, resulting in appellee's appendectomy.

The jury rendered a verdict in favor of appellee and awarded the damages above. Appellants filed a motion for judgment notwithstanding the verdict, wherein they averred appellee failed to present competent expert testimony regarding the standard of care and proximate cause. The trial court denied the motion. This appeal ensued.

## II.  STANDARD OF REVIEW

"We analyze the denial of a motion for judgment notwithstanding the verdict under the legal-sufficiency standard of review." *BRCC Enters. LLC v. Skie*, 697 S.W.3d 417, 422 (Tex. App.—Houston [14th Dist.] 2024, no pet.) (citing *City of Keller v. Wilson*, 168

S.W.3d 802, 823 (Tex. 2005)). When reviewing the legal sufficiency of the evidence, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *Crenshaw v. Kennedy Wire Rope & Sling Co.*, 327 S.W.3d 216, 226 (Tex. App.—San Antonio 2010), *review granted, judgment vacated, and remanded by agreement*, No. 10-0610, 2010 WL 11750184 (Tex. Oct. 29, 2010). We credit favorable evidence if a reasonable factfinder could do so, and disregard contrary evidence unless a reasonable factfinder could not do so. *Id*. "If there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge fails." *Id*. "More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id*. (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2024) (cleaned up)).

## III. STANDARD OF CARE

By their first issue, appellants argue that appellee failed to elicit expert testimony regarding Dr. Luttrell's standard of care because appellee "called no expert witness on her own behalf," and Dr. Luttrell and Dr. Boyle "never testified that Dr. Luttrell breached the standard of care."

"The medical standard of care is the threshold question in a medical malpractice case and must be established so that the fact finder can determine whether the doctor's act or omission deviated from the standard of care to the degree that it constituted negligence or malpractice." *Benish v. Grottie*, 281 S.W.3d 184, 191 (Tex. App.—Fort Worth 2009, pet. denied) (citing *Coan v. Winters*, 646 S.W.2d 655, 657 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.)). A health care provider's standard of care is what an

5

ordinarily prudent health care provider would do under the circumstances. *Kingwood Pines Hosp., LLC v. Gomez*, 362 S.W.3d 740, 747 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Apodaca v. Miller*, 281 S.W.3d 123, 128 (Tex. App.—El Paso 2008, no pet.). Thus, the patient-plaintiff's burden of proof is to establish that the health care provider "has undertaken a mode or form of treatment which a reasonable and prudent member of the medical profession would not have undertaken under the same or similar circumstances." *Jackson v. Axelrad*, 221 S.W.3d 650, 655 (Tex. 2007). "'Unless the mode or form of treatment is a matter of common knowledge or is within the experience of the layman, the patient must tender expert testimony' to prove the claim." *Bioderm Skin Care, LLC v. Sok*, 426 S.W.3d 753, 761 (Tex. 2014) (quoting *Chambers v. Conaway*, 883 S.W.2d 156, 158 (Tex.1993)).

Despite appellants' contention that appellee was required to present her own expert witness in order to prove the standard of care, "the defendant physician's own testimony can establish the standard of care." *Thota v. Young*, 366 S.W.3d 678, 695 (Tex. 2012); *Beal v. Hamilton*, 712 S.W.2d 873, 876 (Tex. App.—Houston [1st Dist.] 1986, no writ); *see, e.g.*, *Williams v. Bennett*, 610 S.W.2d 144, 146 (Tex. 1980) (holding that the defendant doctor established the standard of care by testifying that "it would be bad medical practice to dismiss[, from the hospital,] a patient during the course of a virulent infectious process," and other testimony indicated that the plaintiff was secreting foul smelling pus at the time of her hospital discharge). Despite their contention that appellee failed to prove that Dr. Luttrell breached his standard of care because neither doctor "testified that Dr. Luttrell breached the standard of care," an expert's testimony does not

6

require the use of magic words or phrases. *Baty v. Futrell*, 543 S.W.3d 689, 693 (Tex. 2018); *Battaglia v. Alexander*, 177 S.W.3d 893, 901 (Tex. 2005). In fact, we are concerned with the substance of an expert's testimony rather than conclusions or technical words. *Chandler v. Singh*, 129 S.W.3d 184, 189 (Tex. App.—Texarkana 2004, no pet.).

Moreover, while Dr. Luttrell and Dr. Boyle were defense witnesses, the factfinder may "accept or reject all or any part of [a witnesses'] testimony." *Schneider v. Whatley*, 535 S.W.3d 236, 240 (Tex. App.—El Paso 2017, no pet.). The jury was free to accept the parts of the experts' testimony that established a standard of care and reject the parts of their testimony that stated Dr. Luttrell complied with that standard.

Here, Dr. Luttrell established the standard of care by testifying that it is "the dentist's job, and sole job, to make sure that the dental bur [—] is properly seated and secured." Dr. Luttrell ruled out that the handpiece could have been defective. Specifically, he testified that he had no reason to believe the handpiece was defective "[a]s far as [he] could tell." In fact, he did not take the handpiece out of service, he continued using the handpiece thereafter on other patients with no issue, and he did not know which of his handpieces was actually used when caring for appellee. Dr. Boyle testified that, after the incident at issue, the handpiece should have been taken out of service. Dr. Luttrell relatedly testified, "I don't disagree with him, necessarily."

Dr. Luttrell also testified as to how the handpiece generally works. He described the handpiece as "self-explanatory." He testified "I did not . . . know there was an instruction manual for the high-speed handpiece any more than I knew there was an instruction manual for the light switch on my dental light." He described his training on the

7

specific style of handpiece at issue as follows: "the salesmen probably came by, handed me the handpiece, and goes, 'Look how easy this is. Push the button and stick it in.' So, there was my training." He further testified that after a bur is placed in the handpiece, "you tug on it" and "you spin the handpiece." The handpiece should be taken out of service if there is any "malfunction[,] . . . wobble[,] . . . vibration[,] or it doesn't function like it normally does." Dr. Luttrell testified that, on the occasion at issue, he has "no specific memory" of his "process of placement of the bur into the handpiece." Nevertheless, he testified, "I started to work on [appellee's] first tooth . . . and the vibration of the—the bur wiggled," causing the bur to fall into appellee's mouth.

While Dr. Luttrell testified that the dental bur shank could have been improperly sized by the manufacturer, Dr. Boyle testified that an improperly sized dental bur shank would have been noticeable to the practitioner upon inserting it in a handpiece because you can "feel it, like you move it, you see it slip."

Thus, we find that Dr. Luttrell sufficiently established his standard of care. *See Jackson*, 221 S.W.3d at 655. Dr. Luttrell's and Dr. Boyles's testimony excluded the plausible causes of bur dislodgment other than improper seating and securing of the bur. *See Windrum v. Kareh*, 581 S.W.3d 761, 778 (Tex. 2019) (providing that when "there is evidence of other plausible causes of the injury that could be negated," the claimant must merely "provide evidence that excludes those plausible causes with reasonable certainty" and "need not speculate about [and disprove] other possible unknown causes"). Thus, the evidence was sufficient for the jury to determine that Dr. Luttrell breached his

8

duty to properly seat and secure the dental bur. *See Thota*, 366 S.W.3d at 695; *Beal*, 712 S.W.2d at 876; *Williams*, 610 S.W.2d at 146. We overrule appellants' first issue.

## IV. CAUSATION

By their second issue, appellants argue that appellee failed to elicit expert testimony that Dr. Luttrell's breach caused appellee's injuries. Specifically, appellants contend that appellee failed to establish both cause-in-fact and foreseeability.

To prevail on a negligence claim, the plaintiff must establish that her damages were "proximately caused by the [defendant's] breach" of a legal duty. *Windrum*, 581 S.W.3d at 768. Proximate cause includes both cause-in-fact and foreseeability. *Werner Enterprises, Inc. v. Blake*, 719 S.W.3d 532, 532 (Tex. 2025). In cases involving medical conditions or bodily injury, "non-expert evidence alone is sufficient to support a finding of causation in limited circumstances where both the occurrence and conditions complained of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence." *Guevara v. Ferrer*, 247 S.W.3d 662, 668–69 (Tex. 2007). For example, where a plaintiff is pulled from an automobile accident with "overt injuries such as broken bones or lacerations, and undisputed evidence which reasonable jurors could not disbelieve showed that he did not have such injuries before the accident, then the physical conditions and causal relationship between the accident and the conditions would ordinarily be within the general experience and common knowledge of laypersons." *Id*. at 667.

9

## A.    Cause-in-Fact

Appellants contend that appellee failed to establish cause-in-fact because she "was required—but failed—to proffer expert testimony that Dr. Luttrell violated the proper medical standard which proximately caused [appellee]'s injury." Like appellants' previous argument, they contend that appellee was required to call her own expert at trial and could not rely on Dr. Boyle's testimony to prove cause-in-fact.

"The test for cause[-]in[-]fact is whether the act or omission was a substantial factor in causing the injury without which the harm would not have occurred." *Williams v. Colthurst*, 253 S.W.3d 353, 365 (Tex. App.—Eastland 2008, no pet.) (citing *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003)).

Here, it is undisputed that the bur fell in the back of appellee's mouth—the "worst possible place"—while Dr. Luttrell was polishing appellee's tooth.   For instance, when the patient is lying back, Dr. Luttrell testified that "there is a very strong tendency to want to swallow." Appellant did in fact swallow. Thirteen days later, appellee underwent a surgical procedure that removed the bur and the organ it was lodged into. There was no evidence that appellee had a bur inside her intestines prior to her appointment with Dr. Luttrell. We hold that it is within the general experience and common knowledge of a layperson to determine that an improperly seated and secured dental bur that is swallowed after falling into the back of the mouth is a substantial factor in causing injuries associated with removing such item from the body of the person who swallowed it. *See Guevara*, 247 S.W.3d at 667–68. Therefore, because non-expert evidence alone was

sufficient to support a finding of cause-in-fact, it was not required for appellee to present her own medical expert at trial. *See id.*

Appellants further complain there was no expert testimony offered "as to how or why the bur dislodged from the handpiece in [appellee's] mouth when Dr. Luttrell was polishing her tooth." However, as addressed previously, Dr. Luttrell and Dr. Boyle proffered testimony excluding handpiece defects and dental bur defects as possible causes of the bur dislodgement. *See Windrum*, 581 S.W.3d at 778.[2]

For the foregoing reasons, we find the evidence was sufficient for a reasonable juror to conclude that Dr. Luttrell's breach of his duty to properly seat and secure the dental bur was a substantial factor in causing the injuries sustained by appellee. *See Williams*, 253 S.W.3d at 365.

## B. Foreseeability

Appellants contend that appellee failed to establish foreseeability because "no testimony was offered demonstrating that the incident was foreseeable."

---

[2] Dr. Luttrell testified that appellee was responsible for the "swallowing" part of the events that took place. To the extent appellants argue this potential cause of appellee's injuries bars causation as it relates to Dr. Luttrell's actions, we disagree. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.003 (proportionate responsibility statute); *Nabors Well Servs., Ltd. v. Romero*, 456 S.W.3d 553, 561 (Tex. 2015) (explaining the "Legislature's desire to compare responsibility for *injuries* rather than bar recovery, even if the claimant was partly at fault or violated some legal standard"); *Windrum v. Kareh*, 581 S.W.3d 761, 777 (Tex. 2019) (stating "a defendant's act or omission need not be the sole cause of an injury, as long as it is a substantial factor in bringing about the injury"). While we assume without deciding that appellee could have borne some responsibility for her injuries by swallowing, such is a matter of comparative fault rather than causation. *See id*. Here, appellants never sought to submit a comparative fault question to the jury, and thus, such issue is unpreserved. *See Gonzalez v. Sanchez*, 717 S.W.3d 516, 529 (Tex. App.—Eastland 2025, no pet.) (stating "the burden of proof is on the defendant to present sufficient evidence to establish [the proportionate responsibility] defense and obtain the requisite jury findings" (quoting *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 156 (Tex. 2015))).

11

"A physician's or health care provider's breach is a foreseeable cause of the plaintiff's injury if a physician or health care provider of ordinary intelligence would have anticipated the danger caused by the negligent act or omission." *Curnel v. Houston Methodist Hosp.-Willowbrook*, 562 S.W.3d 553, 562 (Tex. App.—Houston [1st Dist.] 2018, no pet.). "The exact sequence of events need not be foreseeable, but the conduct must be sufficiently similar to give the defendant notice of the general nature of the danger." *Douglas v. Hardy*, 600 S.W.3d 358, 368 (Tex. App.—Tyler 2019, no pet.).

Here, the jury heard evidence that a dental bur must be seated and secured inside of a dental handpiece. In fact, the practitioner should then test the placement by "tug[ging] on it . . . and spin[ning] the handpiece." If there is any "malfunction[,] . . . wobble[,] . . . [or] vibration," the practitioner should take the handpiece out of service and send it for repair. In the present case, Dr. Luttrell stated that the bur "vibrat[ed]" and "wiggled" before falling into appellee's mouth. Additionally, Dr. Boyle testified that he has experienced dental burs fall out of his handpiece and onto his dental tray. Similarly, Dr. Luttrell's dental assistant testified that she has observed dental burs fall out of handpieces. Dr. Boyle also testified that he has dropped dental crowns and dental screwdrivers into the mouths of patients, resulting in those items being swallowed.

From the foregoing, we find the jury had ample evidence to conclude that a practitioner of ordinary intelligence would have anticipated that a dental bur could fall into a patient's mouth and be swallowed if it was improperly seated and secured in the handpiece. *See Curnel*, 562 S.W.3d at 562. We overrule appellant's second issue.

12

### V. JUDGMENT AGAINST BOERNE DENTAL CENTER

By their third issue, appellants argue that Dr. Luttrell is not liable, and thus, Boerne Dental Center is also not liable for appellee's damages under a respondeat superior or vicarious liability theory. *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130 (Tex. 2018) (providing that respondeat superior or vicarious liability is a common law doctrine imputing liability for one person's fault to another because of a relationship between them such as employer-employee). Given that this issue is premised on the success of one or both of the arguments overruled above, we also overrule appellants' third issue.[3]

### VI. CONCLUSION

We affirm the judgment of the trial court.

JON WEST
Justice

Delivered and filed on the
30th day of October, 2025.

---

[3] Appellants appear to argue in their appellate brief that appellee failed to submit an issue to the jury related to respondeat superior liability. However, in appellants' reply brief, they state that they "never challenged the judgment against Boerne Dental [Center] on the basis of Dr. Luttrell's status as its agent or employee or Dr. Luttrell's ownership of the practice per the Texas Business Organization Code." Thus, to the extent appellants raised this issue on appeal, they retracted it in their reply brief.